No. 72–109. PRESIDENTS COUNCIL, DISTRICT 25, ET AL. *v.* COMMUNITY SCHOOL BOARD No. 25 ET AL. C. A. 2d Cir. Motion of Authors League of America, Inc., for leave to file a brief as *amicus curiae* granted. Certiorari denied. MR. JUSTICE STEWART would grant the petition for certiorari and set case for oral argument. 

MR. JUSTICE DOUGLAS, dissenting.

A book entitled Down These Mean Streets by Piri Thomas was purchased by the librarians of three junior high schools in School District 25 in Queens, New York. The novel describes in graphic detail sexual and drug and drug-related activities that are a part of everyday life for those who live in Spanish Harlem. Its purpose was to acquaint the youth of Queens with the problems of their contemporaries in this social setting. The book was objected to by some parents and, after a public meeting, the School Board by a vote of 5–3 banned it from the libraries. A later vote by the Board amended the order so the book is now kept on the shelves for direct loan to any parent who wants his or her children to have access to it. No child can borrow it directly.

This suit was brought on behalf of a principal, a librarian, and various parents and children who request that the court declare the resolution adopted by the Board unconstitutional, and order the defendants to place the book in normal circulation in the libraries and enjoin them from interfering with other school libraries within their jurisdiction which desire to purchase the book.

Actions of school boards are not immune from constitutional scrutiny. *Meyer* v. *Nebraska,* 262 U. S. 390 (1923); *Bartels* v. *Iowa,* 262 U. S. 404 (1923); *Epperson* v. *Arkansas,* 393 U. S. 97 (1968); *Tinker* v. *Des Moines School Dist.,* 393 U. S. 503 (1969). Academic freedom has been upheld against attack on various fronts.

*Sweezy* v. *New Hampshire,* 354 U. S. 234 (1957); *Wieman* v. *Updegraff,* 344 U. S. 183 (1952); *Keyishian* v. *Board of Regents,* 385 U. S. 589 (1967). The First Amendment involves not only the right to speak and publish, but also the right to hear, to learn, to know. *Martin* v. *Struthers,* 319 U. S. 141, 143 (1943); *Stanley* v. *Georgia,* 394 U. S. 557, 564 (1969); *Thomas* v. *Collins,* 323 U. S. 516, 534 (1945); *Red Lion Broadcasting Co.* v. *FCC,* 395 U. S. 367, 386, 390 (1969). And this Court has recognized that this right to know is " 'nowhere more vital' than in our schools and universities," *Kleindienst* v. *Mandel,* 408 U. S. 753, 763 (1972); *Shelton* v. *Tucker,* 364 U. S. 479, 487 (1960); *Sweezy* v. *New Hampshire,* 354 U. S., at 250 (opinion of Warren, C. J.); *Keyishian* v. *Board of Regents,* 385 U. S., at 603. The book involved is not alleged to be obscene either under the standards of *Roth* v. *United States,* 354 U. S. 476 (1957), or under the stricter standards for minors set forth in *Ginsberg* v. *New York,* 390 U. S. 629 (1968).

The Board, however, contends that a book with such vivid accounts of sordid and perverted occurrences is not good for junior high students. At trial both sides produced expert witnesses to prove the value or harm of the novel. At school the children are allowed to discuss the contents of the book and the social problems it portrays. They can do everything but read it. This in my mind lessens somewhat the contention that the subject matter of the book is not proper.

The First Amendment is a preferred right and is of great importance in the schools. In *Tinker,* the Court held that the First Amendment can only be restricted in the schools when a disciplinary problem is raised. No such allegation is asserted here. What else can the School Board now decide it does not like? How else will its sensibilities be offended? Are we sending children to school to be educated by the norms of

the School Board or are we educating our youth to shed the prejudices of the past, to explore all forms of thought, and to find solutions to our world's problems?

Another requirement of the First Amendment is that any statute that imposes restrictions on the freedoms it protects must be narrowly drawn so as to impose any limitation in only the least restrictive way. N. Y. Educ. Law § 2590–e (3) (1970) gives the Board power to "determine matters relating to the instruction of students, including the selection of textbooks and other instructional materials . . . ," provided they are approved by the Chancellor. The regulation of the State Commissioner of Education says that secondary school book collections "shall consist of books approved as satisfactory for (1) supplementing the curriculum (2) reference and general information (3) appreciation and (4) pleasure reading," 8 N. Y. Code, Rules & Regs. Educ., § 91.1 (b) (1966). Even a casual reading of these regulations shows that they contain no discrete limitations of the type spoken of in *Cantwell* v. *Connecticut,* 310 U. S. 296 (1940), *Speiser* v. *Randall,* 357 U. S. 513 (1958), or *Shelton* v. *Tucker, supra.*

Because the issues raised here are crucial to our national life, I would hear argument in this case.