**UNITED STATES of America, Appellee,**

v.

**Melvin FRIEDMAN, Appellant.**

**No. 75–1079.**

United States Court of Appeals, Tenth Circuit.

Argued Sept. 3, 1975.

Decided Jan. 16, 1976.

Rehearing Denied March 15, 1976.

786

Robert P. Trout, Atty., Dept. of Justice (William R. Burkett, U. S. Atty., on the brief), for appellee.

Robert Eugene Smith, Atlanta, Ga. (Gilbert H. Deitch, and Michael Clutter, Atlanta, Ga., and Jim Merz, Oklahoma City, Okl., of counsel, on the brief), for appellant.

Before PICKETT, SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Melvin Friedman and Peachtree National Distributors, Inc., were jointly charged in a one-count indictment with knowingly transporting on or about December 10, 1970, and causing to be thus transported in interstate commerce, from Atlanta, Georgia, to Lawton, Oklahoma, for the purpose of sale and distribution, an obscene, lewd, lascivious and filthy book, to wit: a book entitled "The Animal Lovers", in violation of 18 U.S.C. § 1465. Both the individual defendant, Friedman, and the company of which he was the president and active manager were convicted by a jury on November 29, 1971. At trial the court instructed the jury in accord with the definition of obscenity as set forth in the plurality opinion in *Memoirs v. Massachusetts,* 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). Each defendant was fined $5,000 and Friedman was sentenced to thirty months in the custody of the Attorney General.

While these convictions were pending on appeal in this court, the Supreme Court on June 21, 1973, handed down a series of decisions on the issue of obscenity, which decisions will hereinafter be referred to as the *Miller* case.[1] On review we vacated the convictions of both Friedman and his company and remanded the matter to the district court for a new trial. In thus remanding we indicated that there should be a "reconsideration" by the trial court in the light of *Miller. See United States v. Friedman,* 488 F.2d 1141 (10th Cir. 1973).

Prior to retrial of this matter Peachtree National Distributors, Inc., changed its plea to one of guilty. Friedman proceeded to retrial, and he was again convicted by a jury. This time the trial court instructed the jury in accord with the definition of obscenity as set forth in *Miller.* Friedman was again fined $5,000 and sentenced to thirty months in the custody of the Attorney General. Friedman now appeals his second conviction.

On appeal, Friedman raises essentially three points: (1) the trial court erred in refusing to permit testimony concerning

1. *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Kaplan v. California,* 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); *United States v. 12 200-Ft. Reels of Super 8MM. Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); and *United States v. Orito,* 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973).

the question as to whether "The Animal Lovers" is "utterly without redeeming social 'value'," and in connection therewith should have instructed the jury on that particular matter in accord with *Memoirs,* and that by instructing the jury in accord with *Miller* violated Friedman's rights under the First, Fifth and Sixth Amendments; (2) assuming that it was proper at the second trial of this matter to instruct the jury in accord with the definition of obscenity as set forth in *Miller,* the instructions given were unclear and confusing and did not "track" with the language of *Miller,* and (3) the trial court erred in admitting certain evidence as bearing on the question of scienter and compounded that error by its instruction on scienter. We find no reversible error and therefore affirm.

Obscenity as defined in *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and as redefined in *Memoirs v. Massachusetts,* 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), was supposedly to be measured against the following standards:

(1) The dominant theme of the material taken as a whole appeals to a prurient interest in sex;

(2) The material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters;

(3) The material is utterly without redeeming social value.

In *Miller* the Supreme Court stated that the "basic guidelines" to be used by the trier of the fact in determining whether the material in question is obscene under a state statute are as follows:

(1) Whether the "average person applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest;

(2) Whether the work depicts or describes in a patently offensive way sexual conduct specifically defined by the applicable state law; and

(3) Whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.

The first two guidelines under both *Memoirs* and *Miller* are substantially the same, and the only real change relates to the so-called third guideline. The majority in *Miller* refused to "adopt" as a constitutional standard the "utterly without redeeming social value" test of *Memoirs.* In thus refusing to "adopt" that particular standard the Supreme Court noted that the "utterly without" standard had never been adopted by a majority of the court, and had been espoused at any one time by only a plurality, three Justices, to be precise. In place of the "utterly without" standard, the majority in *Miller* promulgated the guideline as to whether the work taken as a whole lacks serious literary, artistic, political or scientific value.

As above indicated, the acts relied on by the Government in its prosecution of Friedman occurred in 1970, and he was first tried in 1971. The trial court instructed the jury in accord with *Roth-Memoirs.* The jury convicted, and the case was pending in this court at the time of the *Miller* decision. It was in this setting that we vacated the convictions of both Friedman and Peachtree and remanded the matter to the trial court for a new trial with the observation that the "recent decisions of the Supreme Court require a reconsideration of the standards applicable to cases of this nature."

On retrial, the trial court refused to allow testimony which Friedman sought to elicit from an assistant professor of English at the University of Oklahoma who had read "The Animal Lovers", and would have, if permitted, expressed the opinion that the book was not "utterly without redeeming social value." And, consistent with that evidentiary ruling, the trial court refused to instruct on the "utterly without" standard of *Memoirs.* In the present appeal, Friedman earnestly contends that his second trial should have been in accord with the definition of obscenity as enunciated in *Memoirs,*

and that to apply the *Miller* rule to his pre-*Miller* conduct is a form of retroactivity that violates the spirit, if not the letter, of the ex post facto prohibition in the United States Constitution. We believe this line of argument to be unavailing on several grounds.

■ In the first place, we deem the law of this case as expressed in our earlier opinion to be that Friedman's second trial be conducted in accord with the *Miller* case. There was of course no reason for us to vacate the earlier conviction and remand the case for a second trial to be conducted in accord with *Memoirs,* since at his first trial he was tried and convicted under the *Memoirs* rule. So, it was patently implicit in our first opinion, if not expressly stated, that retrial should be in accord with *Miller.* In our earlier opinion we recognized that our disposition of Friedman's first appeal was not in accord with decisions of other circuits. Notwithstanding, we did remand for a new trial in the light of *Miller,* and such is now the law of the case.

■ Furthermore, we have real doubt that even before *Miller* a defendant in an obscenity case had the constitutional right to an instruction which, in effect, would preclude a conviction under 18 U.S.C. § 1465 unless the material in question be found to be "utterly without redeeming social 'value.'" As was pointedly observed by the majority of the court in *Miller,* and as was reemphasized in *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), the "'utterly without redeeming social value' test of *Memoirs v. Massachusetts,* 383 U.S., at 419, 86 S.Ct. [975], at 977; . . has never commanded the adherence of more than three Justices at any one time. . . . " That trial courts prior to *Miller* did instruct in an obscenity case on the "utterly without" standard does not necessarily mean that a failure to so instruct would have constituted error of constitutional proportions. Certainly in light of *Miller* such omission would not have been error. In any event, we hold that as of 1970, when

Friedman shipped "The Animal Lovers" from Georgia to Oklahoma, he had no right to believe that he could not be convicted under 18 U.S.C. § 1465 unless a jury found that "The Animal Lovers" was "utterly without redeeming social value." Friedman had no right to rely upon a statement to that effect "which had never commanded the adherence of more than three Justices at any one time." A mere plurality pronouncement of this type does not have the binding effect that Friedman argues for. A trial court does not necessarily err when it does not follow a rule promulgated by only three Justices of the Supreme Court. In this regard, *see United States v. Pink,* 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942), and *Hertz v. Woodman,* 218 U.S. 205, 30 S.Ct. 621, 54 L.Ed. 1001 (1910). *Pink* and *Hertz* stand for the proposition that though an affirmance by the Supreme Court by an equally divided court is conclusive as to the parties then before the court, the principles of law involved therein not having been agreed upon by a majority of the court prevents the case from becoming authority for the resolution of other cases, either in the Supreme Court itself or in an inferior court.

■ Actually, Friedman has now been convicted by two separate juries under both sets of standards, one jury having been instructed in accord with *Roth-Memoirs* and another jury in accord with *Miller.* Such would appear to us to more than comport with Friedman's due process rights. The objectionable material, a book called "The Animal Lovers", is a part of the record now before us, and in our view the book is obscene judged by any standard. The dominant theme is sex relations between human beings and animals, which is still patently offensive to contemporary community standards, and the book not only has no serious literary or artistic value, but is indeed utterly without redeeming social value. The written word was not deemed sufficient to adequately depict such relationships, and accordingly Peachtree arranged to have the book

profusely illustrated. Suffice it to say that in our view "The Animal Lovers" would be considered obscene under any standards, whether it be *Memoirs, Miller* or for that matter even those of ancient Sodom and Gomorrah. *See United States v. Marks,* 520 F.2d 913 (6th Cir. 1975), where the Sixth Circuit on review found the materials there in question to be obscene under either the *Miller* or *Memoirs* standards. We agree with the trial court that "The Animal Lovers" is filth.

Friedman alternatively asserts that the instructions as given by the trial court in his second trial did not square with *Miller* and were unclear and confusing. We disagree. The trial judge attempted to tailor his instructions to the language of *Miller.* It was not necessary to use verbatim language taken from *Miller.* It is sufficient if the instructions of the court accurately and adequately conveyed the "guidelines" expressed in *Miller. United States v. Hill,* 500 F.2d 733 (5th Cir. 1974), *cert. denied,* 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975). Our study of the instructions, taken in their entirety, leads us to conclude that the jury was adequately instructed in accord with the guidelines of *Miller.*

Friedman's final ground of alleged error concerns the matter of scienter. The scienter required to support a conviction under 18 U.S.C. § 1465 is not that a defendant such as Friedman actually knew that his book "The Animal Lovers" was obscene under legal standards, but only that he knew the general nature and character of the book. *United States v. Hamling,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Rosen v. United States,* 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606 (1896); and *United States v. Marks,* 520 F.2d 913 (6th Cir. 1975). The facts and circumstances of the instant case are amply sufficient to permit the inference that Friedman knew the general nature of "The Animal Lovers." It was not necessary for the Government in order to prove scienter to establish that Friedman had himself read the book. Friedman was president of Peachtree National Distributors, an Atlanta, Georgia concern. He, along with one other, was in charge of the day-to-day operation of Peachtree, which dealt almost exclusively in pornographic materials. All of the various publications shipped from Georgia to the book store in Lawton, Oklahoma, were of the hardcore variety. In this regard, we find no error in admitting into evidence the other publications shipped by Peachtree to the book dealer in Lawton at about the same time as the delivery of "The Animal Lovers." Such had bearing on scienter. All things considered it would border on the ridiculous to hold that there is insufficient evidence to show scienter on the part of Friedman. To the contrary, the record reeks with scienter. And in our view the instructions to the jury regarding scienter were adequate.

Judgment affirmed.