**David BICKNELL, by his guardian Donald Bicknell et al., Plaintiffs–Appellants,**

v.

**VERGENNES UNION HIGH SCHOOL BOARD OF DIRECTORS et al., Defendants–Appellees.**

**No. 569, Docket 79–7676.**

United States Court of Appeals, Second Circuit.

Argued Feb. 6, 1980.

Decided Oct. 2, 1980.

---

See also 2 Cir., 638 F.2d 404.

Brooke Pearson, Montpelier, Vt. (Richard A. Axelrod, Gensburg & Axelrod, St. Johnsbury, Vt., on brief), for plaintiffs–appellants.

Anthony B. Lamb, Burlington, Vt. (Paul, Frank & Collins, Burlington, Vt., on brief), for defendants–appellees.

Before MANSFIELD and NEWMAN, Circuit Judges, and SIFTON,* District Judge.

NEWMAN, Circuit Judge:

This case, like *Pico v. Board of Education,* 638 F.2d 404 (2d Cir. 1980), decided this day, involves a school board's decision to remove books from a school library. In *Pico* a divided panel concluded that the allegations of the complaint and the supporting affidavits presented a triable issue as to whether the book removal had created a sufficient risk of suppressing ideas within the school community to constitute a First Amendment violation. In this case the allegations are insufficient to warrant a trial, and we therefore affirm the decision of the District Court for the District of Vermont (Albert W. Coffrin, Judge), dismissing the complaint for failure to state a claim on which relief can be granted.

The complaint alleged the following facts. In response to an ongoing controversy concerning some of the books at the Vergennes Union High School library, the High School's Board of Directors established a written policy governing the selection and removal of books. That document, entitled the "School Library Bill of Rights for School Library Media Center Program," specifies the rights and responsibilities of the Board, the professional staff, the parents, and the students in this area. The "rights" of the Board are: "To adopt policy and procedure, consistent with statute and regulation–that they feel is in the best interests of students, parents, teachers and community." The "rights" of the professional staff are: "To freely select, in accordance with Board policy, organize and administer the media collection to best serve teachers and students." The "rights" of the students are: "To freely exercise the right to read and to free access to library materials." After specifying some procedures and criteria for the selection of materials, the document then lists some general "Board Guidelines for the Selection of Library Materials." These include a procedure allowing parents to submit requests for reconsideration of a particular book. Upon receipt of such a request, the librarian is to meet with the parents to resolve the issue; any matters that remain unresolved are to be settled by a majority vote of the Board.

Some months after this procedure was adopted, two complaints from parents reached the Board. The books involved were *Dog Day Afternoon* by Patrick Mann and *The Wanderers* by Richard Price; in both cases, the objection of the parents was to the vulgarity and indecency of language in the books. The Board voted to remove *The Wanderers* from the library and to place *Dog Day Afternoon* on a restricted shelf.[1] The complaint acknowledges that

---

* Of the United States District Court for the Eastern District of New York, sitting by designation.

1. Pending establishment of a restricted shelf, *Dog Day Afternoon* was placed in the principal's office, apparently unavailable to students on any basis.

the Board acted in both instances because of the books' vulgar and indecent language. The Board also voted to prohibit the school librarian from purchasing any additional major works of fiction, and subsequently voted that any book purchases other than those in the category "Dorothy Canfield Fisher, science fiction and high interest–low vocabulary" must be reviewed by the school administration in consultation with the Board. Following these actions, a group of students, their parents, library employees, and an unincorporated association known as the Right to Read Defense Fund brought suit to enjoin removal of the books and alteration of the school's library policy.

[redacted] Appellants appear to present two theories on which the alleged facts might establish a violation of constitutionally protected rights. First, they claim that their First Amendment rights have been violated, primarily because the Board's action was motivated solely by the "personal tastes and values" of the Board members.[2] (Appellants' Br. 7). Second, they claim that the Board's action has denied them due process of law because the Board has violated its own internal policies and procedures.

[redacted] In *Pico* a majority of the Court recognized a First Amendment right of members of a school community to be free of the inhibiting effects upon free expression that result when the circumstances surrounding the removal of books create a risk of suppressing ideas. In this case there are no allegations of any facts to indicate that such a risk was created by the circumstances under which the two books were removed. The attention of the Board was first directed to the two books by complaint about their vulgar and indecent language. There is no suggestion that the books were complained about or removed because of their ideas, nor that the Board members acted because of political motivation. On the contrary, appellants acknowledge that the books were removed because of vulgarity and obscenity.[3] Nor is there any claim that the passages found objectionable were beyond the allowable scope accorded school authorities to regulate vulgarity and explicit sexual content. See *Thomas v. Board of Education*, 607 F.2d 1043, 1053 (2d Cir. 1979) (Newman, J., concurring); *Frison v. Franklin County Board of Education*, 596 F.2d 1192 (4th Cir. 1979); *Brubaker v. Board of Education*, 502 F.2d 973 (7th Cir. 1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975).

Appellants do not dispute that the Board has the power to remove these two books because of their language. Their point is that the decision to remove is unlawful when the determination of whether the books are vulgar or indecent is made solely on the basis of Board members' personal tastes and values. But so long as the materials removed are permissibly considered to be vulgar or indecent, it is no cause for legal complaint that the Board members applied their own standards of taste about vulgarity.[4]

2. Appellants also urge that removal of the books infringes First Amendment rights because it impairs the students' access to the removed volumes. Whatever the scope of a right of access in other contexts, *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), young students have no constitutionally protected right of access on school property to material that, whatever its literary merits, is fairly characterized as vulgar and indecent in the school context.

3. "Obscenity" in the context of this case does not mean the Supreme Court's test of obscenity, *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), which must be met before general distribution of material may be constitutionally punished. It refers, instead, only to that degree of sexual explicitness that renders material inappropriate for availability in a school attended by young children.

4. Appellants' objection to the Board's reliance on its own standards of taste is not entirely clear. Their point seems to be that the Board's view of vulgarity and indecency is insufficient to permit book removal in the absence of some demonstration that the removed materials have the capacity to inflict psychological harm. (Appellants' Br. 33). Whatever the standards may be in the context of regulating a student's right of expression, *see Trachtman v. Anker*, 563 F.2d 512 (2d Cir. 1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978),

■ Appellants' due process theory is also without merit. Whatever deprivation of rights can result from the removal of books from a school library, it is not the sort of deprivation that entitles a student or librarian to a hearing before that removal takes place. The nature of the deprivation that triggers due process protection has been a subject of much debate. See *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); L. Tribe, American Constitutional Law 514–32 (1978). It is generally agreed, however, that the deprivation must involve some particularized and personal interest on the part of the person asserting the right. The right recognized in *Pico* is not of that nature; on proper facts, it may be vindicated in a court challenge, but does not assure an opportunity to contest the removal of books before such action is taken.

■ The school librarian has presented a more particularized claim, but she has not alleged that the Board has taken any adverse action of the sort that would require due process protection prior to that action's being taken. The Board did not dismiss her, or reprimand her in any official way; it merely removed certain functions from her job assignment. In general, an employee of a government agency has no constitutionally protected interest in the particular duties of a job assignment.[5] Finally, to the extent the appellants are alleging that the procedures of the library policy were not followed, it is clear that state procedural requirements do not create interests entitled to due process protection.[6] *Boothe v. Hammock*, 605 F.2d 661, 664 (2d Cir. 1979); *Frison v. Franklin County Board of Education, supra*, 596 F.2d at 1194; *Cofone v. Manson*, 594 F.2d 934, 938–39 (2d Cir. 1979).

The dismissal of the complaint is affirmed.

MANSFIELD, Circuit Judge, concurring in the result:

I concur in the result. For the reasons stated in my dissent in *Pico v. Board of Education*, 638 F.2d 404 (2d Cir. 1980), I disagree with Judge Newman's conclusion that there is a legally significant distinction between this case and *Pico*. I would dismiss the complaints in both cases on the grounds stated in my *Pico* dissent.

SIFTON, District Judge (dissenting):

The distinctions perceived by Judge Newman between this case and *Pico v. Board of Education*, 638 F.2d 404 (2d Cir.), decided today, seem to me without basis. The same "constitutionally protected right of access on school property to material that, which ... is fairly characterized as vulgar and indecent" exists in this case as exists in *Pico*. That is, access to such material should not be denied to plaintiffs in a fashion or based on criteria of such indefiniteness and ambiguity as to strike not at the vulgarities and indecencies in the books, but rather at the ideas the books express. As Judge Newman aptly states in his concurring opinion in *Pico*, what is significant is whether "the school has used its public pow-

such standards do not apply to a school board's decision concerning the availability of materials within a school facility. If appellants are concerned that standards of taste permit the exercise of unfettered discretion, that concern also warrants relief only in contexts in which the exercise of such discretion is used to penalize expression rather than to limit availability. *See Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Eisner v. Stamford Board of Education*, 440 F.2d 803 (2d Cir. 1971).

5. It is conceivable that a drastic change in duties could be tantamount to a dismissal, entitling the employee to a prior hearing to contest the lawfulness of such a change. *See Frison v. Franklin County Board of Education, supra* (demotion from career teacher to tutor). But the actions taken by the Board in this case do not approach that level of impact.

6. In the view of the majority in *Pico v. Board of Education, supra*, a failure to observe local procedures, while not raising due process issues, could have evidentiary significance on the issue of whether removal of books was improperly motivated by political concerns. That issue does not arise in this case because there is no dispute that the two books were removed because of vulgarity and indecency.

er to perform an act clearly indicating that the views represented by the forbidden book are unacceptable." *Pico v. Board of Education, supra,* 638 F.2d at 404 (Newman, C. J., concurring). In my opinion, plaintiffs, in this case, should be given an opportunity through discovery and a trial to prove that this is just what has been done by the Vergennes Union High School Board of Directors. Plaintiffs have, in other words, in my view, alleged in their pleading a *prima facie* case of the type described in *Pico.*

Plaintiffs refer in their complaint to a statement of policy and procedure recently established by defendants for operating and maintaining the Vergennes Union High School library and, specifically, for dealing with decisions concerning the contents of the library of the sort here at issue. Indeed, the statement of policy and procedure is annexed as an exhibit to the complaint. The complaint alleges that this statement of policy and procedure was violated by defendants' action; and, in their brief to this Court, plaintiffs state what they would certainly be entitled to prove under the complaint's allegations–that defendants' actions "were undertaken without even a semblance or pretense of following either the substantive, objective criteria or the expressly articulated procedure set forth in the library policy adopted by them...." Specifically, plaintiffs seek an opportunity to prove that defendants ignored the established objective criteria for selection of library materials, disregarded a five–step procedure for the selection of library materials, and by–passed the personnel whose expertise the same defendants had recently determined should be consulted before school book removal could be accomplished. While Judge Coffrin states in his opinion below that defendants employed the procedures set forth in the statement of policy to remove two books from the library, this factual finding by the district judge is completely in conflict with the allegations of the complaint and, accordingly, not the type of decision appropriately made, as here, on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The sort of substantive and procedural irregularity alleged in the complaint does not, in my view, irrevocably condemn defendants' conduct; I agree with Judge Newman that there is no due process argument here. However, it seems to me that detailed allegations of this sort of substantive and procedural irregularity do, for the reasons indicated in my opinion in *Pico,* establish a *prima facie* case deserving of answer, discovery and trial. Plaintiffs should, in other words, be entitled to explore whether the reasons for these irregularities were, as they also allege, that the school board wanted the two books out of the library because of improper ideas they expressed, regardless of what might have been shown concerning the reasons for retaining the books in the library, had the prescribed procedures and criteria been followed. *I would reverse and remand for discovery and trial.*