646 F.2d 714
 7 Media L. Rep. 1363
 Steven A. PICO, by his next friend, Frances Pico, Jacqueline
Gold, by her next friend, Rona Gold, Russell Rieger, by his
next friend, Samuel Rieger, Glenn Yarris, by his next
friend, Richard Yarris, and Paul Sochinski, by his next
friend, Henry Sochinski, Plaintiffs-Appellants,
v.
BOARD OF EDUCATION, ISLAND TREES UNION FREE SCHOOL DISTRICT
NO. 26, Richard Ahrens, Frank Martin, Christina Fusulo,
Patrick Hughes, Richard Melchers, Richard Michaels, and
Louis Nessim, Defendants-Appellees.
 No. 619, Docket 79-7690.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 6, 1980.
Decided Oct. 2, 1980.
On Rehearing and Rehearing en banc Decided March 3, 1981.
 
 NEWMAN, Circuit Judge concurring in a separate opinion.
 MANSFIELD, Circuit Judge, dissents from denial of rehearing in banc in a separate opinion, concurred in by MULLIGAN, TIMBERS, VAN GRAAFEILAND and MESKILL, Circuit Judges.
 
 
 1
 NEWMAN, Circuit Judge (concurring in the denial of rehearing en banc):
 
 
 2
 The authority of a school board to remove from school libraries vulgar and indecent materials because they are vulgar and indecent was upheld by this Court in President's Council District 25 v. Community School Board, 457 F.2d 289 (2d Cir.), cert. denied, 409 U.S. 998, 93 S.Ct. 308, 34 L.Ed.2d 260 (1972), and recently reaffirmed in Bicknell v. Vergennes Union High School Board, 638 F.2d 438, (2d Cir. 1980). This case, though involving books some of which contain vulgar and indecent passages, was remanded for trial because of factually supported allegations (not present in President's Council or Bicknell) that the motivation for the removal and the circumstances under which it occurred posed a sufficient threat to the free expression of ideas within the school community to establish a First Amendment violation. No school board need be deterred from removing vulgar and indecent materials when it confines its concern to vulgarity and indecency. The Board of the Vergennes Union High School took such action, and the complaint against it was dismissed without a trial. On the other hand, a school board is not free to select books for removal because they contain politically unpopular ideas and then expect to avoid a trial of factually supported First Amendment claims by pointing to the existence of vulgar and indecent language in some of those books.
 
 
 3
 Since the complaint remanded for trial differs significantly from President's Council and Bicknell and since articulation of the standard for determining when politically motivated book removal violates the First Amendment, if undertaken by an en banc court, would be inappropriate in advance of fact-finding by the trial court, I concur in the denial of rehearing en banc.
 
 
 4
 MANSFIELD, Circuit Judge (dissenting from denial of en banc consideration), with the concurrence of MULLIGAN, TIMBERS, VAN GRAAFEILAND and MESKILL, JJ.:
 
 
 5
 I dissent from the court's denial of en banc consideration of this case as the result of its 5 to 5 vote on that issue.
 
 
 6
 This case raises the important question of the extent to which a public school board, acting under a state statutory duty to prescribe books to be used in its schools, is prohibited under the Constitution from removing from a school library or curriculum books which it believes to be educationally inappropriate for the school children. More specifically, do school children have a First Amendment right to require the school board to retain on the shelves books considered by it to be unsuitable for their education? Closely allied to these questions is that of what procedure a school board is required to follow under the Constitution in deciding to remove books as educationally inappropriate.
 
 
 7
 The panel majority's views on these questions (expressed in two opinions) conflict with those expressed by the Seventh Circuit in its recent contrary decision in Zykan v. Warsaw Community School Corp., 631 F.2d 1300 (7th Cir. 1980), and with our own earlier contrary decision in President's Council District 25 v. Community School Board, 457 F.2d 289 (2d Cir.), cert. denied, 409 U.S. 998, 93 S.Ct. 308, 34 L.Ed.2d 260 (1972).
 
 
 8
 The panel majority in the present case holds (1) that a board's discontinuance of books may violate the student's First amendment rights of free speech, at least where the motives of the school board are in doubt or it is suspected that student thought may be suppressed, and (2) that where the school board's motives are questioned it bears the burden of justifying its action according to precise procedural criteria. Judge Sifton's opinion concludes that on the undisputed facts the school board defendants "failed to carry their burden of establishing that the manner, if not the motive for their actions, did not violate the first amendment" and therefore they were not entitled to summary judgment. Judge Newman, in a separate panel concurrence, takes the view that the record raises an issue of fact for trial as to whether the board acted to suppress expression of ideas found in the removed books. However, he does not share Judge Sifton's view that the decision can be grounded on the lack of precisely drawn rules for determining which books are to be permitted in a school library.
 
 
 9
 I believe that on undisputed facts the board was constitutionally entitled to remove the books, that it observed due process procedures in removing them, that no expression of ideas was suppressed, and that nothing will be gained by a remand since Judge Sifton's view (quoted above) would virtually mandate a decision for the plaintiffs. As may be seen from the excerpts of the books quoted in footnote 1 of my panel dissent, all but one of the books contain indecent matter, vulgarities, profanities, explicit descriptions of sexual relations, some perverted, or disparaging remarks about Blacks, Jews, or Christ. In unrefuted affidavits board members swore that after reading the books they discontinued them for these reasons. The board did not, as the panel majority suggests, suddenly swoop down and permanently remove the books from the school. It first moved them from the library shelves to the school's Residence Reference Room for review by the board, which obviously took some time because of the limited number of copies available for reading by the 7 board members. Before taking any final action it appointed an 8-person advisory committee to read the books and make recommendations, following which it returned one book to the library shelves, retained another for student reading on a restricted basis, and discontinued the others.
 
 
 10
 The record is undisputed that students and teachers remain free to discuss the ideas in the books, free of the indecencies and vulgarities. Plaintiffs' own statement (submitted under Local Rule 9(g)) of "facts about which no material dispute exists"[1] states that, although the removed books may not be assigned for reading, "defendants have not precluded discussion about the themes of the books or the books themselves." Defendants confirmed this in their similar statement, advising that "No teacher has been instructed not to discuss the books which were removed or to refrain for discussion or comment upon the ideas and positions they represent." The quoted texts from the books, the board's contemporaneous expressions regarding the reasons for its action, and the affidavits of its members (none of which was refuted as required by Rule 56(e), F.R.Civ.P., if plaintiffs wanted to preserve an issue in this regard, SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978)), make it clear that the board acted on rational grounds and without any purpose of suppressing expression of ideas.
 
 
 11
 In short, we are not here faced with violation of the traditional right of teachers and students to express ideas within reasonable limits, see, e. g., Tinker v. Des Moines Ind. Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); James v. Bd. of Education, 461 F.2d 566 (2d Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 491 (1972); Thomas v. Bd. of Education, 607 F.2d 1043 (2d Cir. 1979); Eisner v. Stamford B. of Education, 440 F.2d 803 (2d Cir. 1971), but with the basic question of whether a board can be stymied from carrying out its statutory duty by a lawsuit questioning its motives and procedures, which would require the court rather than the school board to engage in a will-o'-the-wisp investigation of the board's motives and decide what reading curriculum is educationally appropriate for school children under the board's jurisdiction. A mere review of the excerpts from the books removed shows as a matter of common sense (and, in my view, as a matter of law) that the board's action here was justified. Although I strongly favor protecting student thought and expression as guaranteed by the First Amendment, my own reading of the books, including the excerpts quoted in my panel dissent, satisfies me that the panel majority's solicitude stretches the Constitution beyond the breaking point. If a board cannot remove these books as inappropriate, it would simply refuse to remove obviously indecent and vulgar material rather than face a trial as to its motives and procedures.
 
 
 
 [1]
 Rule 9(g) of the General Rules of the District Court for the Eastern District of New York provides:
 "(g) Upon any motion for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.
 "The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.
 "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."