Stevana CASE, et al., Plaintiffs,

v.

**UNIFIED SCHOOL DISTRICT NO. 233, JOHNSON COUNTY, KANSAS, et al., Defendants.**

Civ. A. No. 94–2100–GTV.

United States District Court, D. Kansas.

July 25, 1995.

J. Eugene Balloun, David J. Waxse, John T. Bullock, Shook, Hardy & Bacon, Overland Park, KS, Marjorie Heins, American Civil Liberties Union, New York City, for plaintiffs Steven Case, as parent and next friend of minor, Andy Case, Cynthia Greb, individually, and as parent and next friend of minor, Amanda Greb, Mary Lane Kamberg, individually and parent and as next friend of minor, Rebekka Kamberg, Johanna Kamberg, Amy Pierron, individually, and as parent and next friend of minor, Sam Pierron, Abby Pierron.

J. Eugene Balloun, David J. Waxse, John T. Bullock, Shook, Hardy & Bacon, Overland Park, KS, for plaintiffs Stevana Case, Rex Stonger, individually and as parent and next friend of minor Jon Stonger.

James R. Goheen, Daniel B. Denk, Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Michael G. Norris, Norris, Keplinger & Logan, L.L.C., Overland Park, KS, for defendants Unified School Dist. #233, Johnson County, Kan., Ron Wimmer, in his capacity as Superintendent of Schools, Lowell Ghosey, in his capacity as Principal of Olathe South High School.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This case is now before the court on the following motions:

Defendants' motion for summary judgment (Doc. 115);

Plaintiffs' motion for summary judgment (Doc. 118);

Joint motion for hearing on the cross motions for summary judgment (Doc. 145);

Plaintiffs' motion to exclude the testimony of defendants' expert witnesses and to strike defendants' expert witness report (Doc. 111); and

Plaintiffs' motion for leave to file a supplemental reply in support of the motion to exclude the testimony of defendants' expert witnesses and to strike defendants' expert witness report (Doc. 144).

The court has carefully reviewed the parties' submissions regarding the instant motions and is now prepared to rule. The court has determined that oral argument will not materially assist in the resolution of the cross motions for summary judgment and, therefore, denies the joint motion for oral argument (Doc. 145). For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part; plaintiffs' motion for summary judgment is denied; plaintiffs' motion to exclude the testimony of defendants expert witness and to strike defendants' expert witness report is denied; plaintiffs' motion to file a supplemental reply is denied.

## I. Factual Background

The following uncontroverted facts are established in accordance with Fed.R.Civ.P. 56 and D.Kan. Rule 206(c):

Plaintiffs are students, former students, parents of students, and a teacher at schools within the defendant Unified School District No. 233 (the "Olathe School District" or the "District"). Plaintiffs bring this action for alleged violations of their constitutional rights arising out of the District's removal of a book, *Annie on My Mind*, from the school libraries. Defendants include the Olathe School District, Dr. Ron Wimmer, Superintendent of Schools for the Olathe School District, and Dr. Lowell Ghosey, Principal of Olathe South High School.

On or about August 29, 1993, Dr. Wimmer received a letter from Robert Birle, on behalf of the Gay and Lesbian Alliance Against Defamation/Kansas City and Project 21. Mr. Birle offered to donate two books with gay or lesbian story lines to the District. The books included *Annie on My Mind* by Nancy Garden and *All American Boys* by Frank Mosca. *Annie on My Mind* is an award-winning novel for young readers depicting a fictional romantic relationship between two high school girls.

Dr. Wimmer notified the school board members and other school officials of Mr. Birle's offer. In October 1993, Mr. Birle visited high schools in the District and provided copies of the books. *The Kansas City Star* newspaper reported on the donations of the books to local schools.

Following the donation of the two titles, school officials discovered that existing copies of *Annie on My Mind* were on the shelves and available to students in three high school and two junior high libraries in the District. The District's assistant superintendent asked the school librarians to complete a review of the donated books and to provide their conclusions to her. The District has a written Media Selection Policy which contains procedures for selection and reconsideration of challenged library materials.

During the review process by the librarians, the Project 21 donation of books to school libraries received media attention in the metropolitan area. Because of a newspaper article written regarding the donations, the District's assistant superintendent asked to meet with all of the high school librarians. Dr. Wimmer notified the school board members of the book review process.

The school librarians gave *Annie on My Mind* a favorable review. The librarians agreed that *Annie* was appropriate and suitable for high school students and that it should be included in the District library system. The librarians did not give *All American Boys* a favorable review. As a result of the review, the assistant superintendent notified Dr. Wimmer of the results She also wrote Mr. Birle, stating "We have accepted the donation of *Annie on My Mind*, but did not accept [*All American Boys*]." The book donation issue continued to receive media coverage, and the District received telephone calls in response to the coverage.

On December 13, 1994, Dr. Wimmer met with the secondary school librarians about the book donation and issued a press release the following day. The press release indicated that the District would not accept the Project 21 book donations and would not make the books *Annie on My Mind* or *All American Boys* available for student use. On December 15, 1993, numerous newspaper articles reported that the Olathe School District had removed *Annie on My Mind* from the District libraries.

The District's Board of Education met on January 6, 1994. Board members included Dr. Robert K. Drummond, Kevin F. Hammeke, Ronald G. Hinkle, Steve Hougland, Richard R. Marriott, Janet Simpson, and Frank Taylor. Several members of the public who attended the meeting commented on the removal of *Annie on My Mind*. The Board did not make any public comment. The board then adjourned to an executive session "to consult with attorney on matters deemed privileged in attorney-client relationship as required to protect attorney-client privilege and the public interest." The board returned to open session and, again without comment, voted 4–2 to support the action of Dr. Wimmer in removing *Annie on My Mind* from the District's libraries. Board members Dr. Robert K. Drummond, Ronald

G. Hinkle, Richard R. Marriott, and Janet Simpson voted to remove the book. Members Steve Hougland and Kevin F. Hammeke opposed the removal. The remaining board member, Frank Taylor, was not present at the meeting and did not vote on the issue.

On January 26, 1994, plaintiff Amanda Greb met with defendant Dr. Ghosey and showed him a copy of a flier that she proposed to distribute to students regarding the removal of *Annie on My Mind* from the District's libraries. Ms. Greb and Dr. Ghosey met several times regarding the flier and discussed its content and the timing of its proposed distribution. Ms. Greb made some revisions to the flier. The fliers were distributed on February 3, 1994, without incident.

Plaintiffs' complaint contains four counts. In Count I, all plaintiffs except Steven Case in his capacity as teacher seek injunctive and declaratory relief for defendants Olathe School District and Dr. Wimmer's removal of *Annie on My Mind* from the school library in violation of their First and Fourteenth Amendment Rights pursuant to 42 U.S.C. § 1983. In Count II, plaintiff Steven Case, in his capacity as an Olathe School District teacher, seeks injunctive and declaratory relief for defendants Olathe School District and Dr. Wimmer's removal of *Annie on My Mind* from the school library in violation of his First and Fourteenth Amendment pursuant to 42 U.S.C. § 1983. In Count III, plaintiffs Amanda Greb, Rebekka Kamberg, and Jon Stronger seek injunctive and declaratory relief for defendants Olathe School District and Dr. Ghosey's prepublication/predistribution review and censorship of fliers in violation of their First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. In Count IV, plaintiffs seek injunctive and declaratory relief for defendants' violation of plaintiffs' rights guaranteed by the Constitution of the State of Kansas, Bill of Rights § 11.

### II. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

### III. Cross Motions for Summary Judgment

#### A. Removal of Book (Counts I & IV)

Plaintiffs seek injunctive and declaratory relief for violations of their constitutional rights under the First and Fourteenth Amendments and under the Kansas Constitution in connection with the removal of *Annie on My Mind* from the District's school libraries.

#### 1. Jurisdiction: Standing/Injury

Defendants argue that plaintiffs have not shown that they meet the injury requirement of standing. Defendants contend that plaintiffs have not suffered any injury because defendants have not violated plaintiffs' constitutional rights. This is a rather circular

argument that requires a determination of the substantive issues prior to addressing standing.

■ In order to satisfy Article III "case or controversy" requirements, the plaintiffs must establish that they have a personal stake in the outcome of the case. *Roberts v. Madigan*, 921 F.2d. 1047, 1051 (10th Cir. 1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 3025, 120 L.Ed.2d 896 (1992). The Tenth Circuit Court of Appeals described the standing requirements as follows:

> Thus, standing has been held to exist only if the aggrieved party makes a two-fold showing. First, plaintiffs must show that they have suffered a "distinct and palpable injury." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59 [98 S.Ct. 2620, 57 L.Ed.2d 595] (1978). Second, plaintiffs must demonstrate a causal link between the claimed injury and the challenged conduct. *Id.* This second prong may be satisfied by showing that there is a substantial likelihood that the relief sought will address the claimed injury. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 [96 S.Ct. 1917, 48 L.Ed.2d 450] (1976).

*Id.*

■ Plaintiffs in the present case include students and parents in the Olathe School District. Four of the plaintiffs have graduated, but continue to have access to the school libraries on "Media Night," which occurs one night per week. Five of the plaintiffs are parents of students currently enrolled in the District. The remaining four students are currently enrolled at a junior high and high schools in the District. One of these four current students attended grade school at the time of the book removal. It is unclear from the record whether a grade school student had access to a book located in a junior high or high school library. If not, then the grade school plaintiff did not suffer any injury. *Roberts v. Madigan*, 921 F.2d at 1052 ("students cannot claim First Amendment violations for the removal of books to which they did not have access").

■ Assuming that a constitutional violation occurred, it appears that plaintiffs can demonstrate injury and a causal connection between the injury and the removal of the book. Injunctive and declaratory relief would redress that injury because access to the book from the school library would be restored. The court concludes that the parents and all of the students except the student enrolled in grade school at the time of the book removal have satisfied the standing requirements.

*2. Constitutionality of Removal Decision: First Amendment*

In *Board of Education v. Pico*, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982), the Court affirmed the Second Circuit's reversal of the district court's grant of summary judgment in favor of a school board that had removed nine books from the school library. The major difficulty the court faces in applying *Pico* to the case now before it is that it is a plurality opinion, and no clear legal rule emerges from it. *United States v. Friedman*, 528 F.2d 784 (10th Cir.1976), *judgment vacated on other grounds*, 430 U.S. 925, 97 S.Ct. 1541, 51 L.Ed.2d 769 (1977) ("A mere plurality pronouncement of this type does not have the binding effect that [defendant] argues for. A trial court does not necessarily err when it does not follow a rule promulgated by only three Justices of the Supreme Court.").

In *Pico*, Justice Brennen announced the judgment of the court in a plurality joined by Justices Marshall and Stevens. Justice Blackmun joined in the plurality with the exception of one part and wrote separately to clarify his First Amendment analysis. Justice White joined in the judgment, but preferred to put off announcing a legal rule until the trial court determined why school officials removed the books.

What clearly emerges from the *Pico* decision is that the trial court must determine the motivation of the school officials in removing the book. Five of the justices in *Pico* agreed that some motivations would be unconstitutional. The plurality found the motivations unconstitutional if school officials "intended by their removal decision to deny respondents access to ideas with which [the officials] disagreed, and if this intent was the

decisive factor in [the removal] decision." *Pico*, 457 U.S. at 871, 102 S.Ct. at 2810. Removal may be permissible if based on vulgarity or "educational suitability." *Id.*

Justice Blackmun disagreed with the plurality's assertion that school children have a "right to receive information." *Id.* at 875–79, 102 S.Ct. at 2812–14. Instead, he focused on the State's denial of access to ideas. *Id.* at 879 n. 2, 102 S.Ct. at 2814 n. 2. He would hold that "school officials may not remove books for the purpose of restricting access to the political ideas or social perspectives discussed in them, when the action is motivated simply by the officials' disapproval of the ideas involved." *Pico*, 457 U.S. at 879–80, 102 S.Ct. at 2814. The school board must "be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Id.* at 880, 102 S.Ct. at 2814–15 (quoting *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 509, 89 S.Ct. 733, 738, 21 L.Ed.2d 731 (1969)).

Justice White's concurrence does not reveal what standard he would use in judging whether a school board's removal of a book was constitutional. *Id.* at 883–84, 102 S.Ct. at 2816. Accordingly, we are left without a legal rule announced by a majority of the Supreme Court.

Despite the failure of the Court in *Pico* to reach a majority decision, the case must be used as a starting point. This is the only Supreme Court decision dealing specifically with removal of books from a public school library. Defendants would have the court ignore *Pico* and apply the standard announced in *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 266, 108 S.Ct. 562, 567, 98 L.Ed.2d 592 (1988). In *Hazelwood*, the court held that school districts are entitled to exercise broad discretion in the management of curricular affairs "so long as their actions are reasonably related to legitimate pedagogical concerns." *Hazelwood* concerned a school official's control of the content of a school sponsored newspaper. School officials are able to exercise greater control over student expression that is a part of the school curriculum. *Hazelwood* is distinguish-

able from the present case because it was a curriculum case.

Even if the court concluded that *Pico* is not persuasive precedent, the majority of courts faced with a school book banning case have held that the removal of a book was unconstitutional. *Minarcini v. Strongsville City School Dist.*, 541 F.2d 577 (6th Cir.1976) (removal of books because school board found them distasteful was unconstitutional); *Delcarpio v. St. Tammany Parish School Board*, 865 F.Supp. 350 (E.D.La.1994) (removal of book because ideas conveyed in book were not consistent with board members' values, concepts of morality, or religious beliefs was unconstitutional); *Roberts v. Madigan*, 702 F.Supp. 1505 (D.Colo.1989), *aff'd*, 921 F.2d 1047 (10th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 3025, 120 L.Ed.2d 896 (1992) (citing *Pico*, the district court held that removal of Bible from school library was unconstitutional); *Sheck v. Baileyville School Committee*, 530 F.Supp. 679 (D.Me.1982) (students and parents entitled to preliminary injunction against school committee for banning of entire book for its "objectionable" language); *Salvail v. Nashua Bd. of Educ.*, 469 F.Supp. 1269 (D.N.H.1979) (removal of Ms. magazine for "political" content was unconstitutional); *Right to Read Defense Committee of Chelsea v. School Committee*, 454 F.Supp. 703 (D.Mass.1978) (act of school committee in removing book containing poem which included harsh but not obscene language infringed upon First Amendment rights of students and faculty). *But see Bicknell v. Vergennes Union High School Bd. of Directors*, 638 F.2d 438 (2d Cir.1980) (no First Amendment violation in removing books on basis of vulgarity and indecency of language); *Presidents Council v. Community School Bd*, 457 F.2d 289 (2d Cir.), *cert. denied*, 409 U.S. 998, 93 S.Ct. 308, 34 L.Ed.2d 260 (1972) (removal of book about youth's life in Spanish Harlem and restriction to availability only to parents was not unconstitutional).

At least one district court has attempted to apply the *Pico* decision. In a recent decision in the Eastern District of Louisiana, the court granted summary judgment in favor of plaintiffs, finding that the school board's re-

moval of a book from the school library was unconstitutional. *Delcarpio v. St. Tammany Parish School Board*, 865 F.Supp. 350 (E.D.La.1994). Guided by the plurality opinion in *Pico*, the court held that the school board's decision to remove a voodoo spell book was intended to deny students access to ideas not consistent with board members' values, concepts of morality and religious beliefs in violation of the First Amendment. *Id.* at 363. The *Delcarpio* court used deposition testimony of the school board members to reach this conclusion and grant summary judgment in favor of plaintiffs.

■ Summary judgment is ordinarily inappropriate where individual state of mind and intent are implicated. *Magruder v. Runyon*, 844 F.Supp. 696 (D.Kan.1994), *aff'd*, 54 F.3d 787 (10th Cir.1995). The court has reviewed the deposition testimony of Dr. Wimmer and the District Board of Education members. Based upon the record before the court, I conclude that a genuine issue of fact remains as to the intent of the defendants in removing the book. Therefore, the cross motions for summary judgment are denied and this case will proceed to trial on that issue.

### 3. Constitutionality of Removal Decision: Due Process

Defendants contend that plaintiffs have no right to due process in a school book removal case. Accordingly, defendants seek dismissal of plaintiffs' claims based upon due process violations.

■ The Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of life, liberty or property, without due process of law...." U.S. Const. amend 14, § 1. "First Amendment free speech is a fundamental individual liberty which no state may withhold without due process." *Sheck v. Baileyville School Committee*, 530 F.Supp. 679, 690 (D.Maine 1982) (citing *Lovell v. Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938)). Fourteenth Amendment protections extend to all persons, including students. *Id.* (quoting *Tinker v. Des Moines Independent School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969)). "There is no more appropriate

context than [school libraries] for the careful delineation and observance of 'due process' standards and procedures." *Id.*

■ Plaintiffs have presented evidence that the Olathe School District failed to follow its own procedures for removal of books from the school libraries. The court concludes that there is a genuine issue of material fact whether defendants violated plaintiffs' constitutional right to due process. The cross motions for summary judgment on the issue of due process are denied. That issue will also be tried.

### B. Steven Case's Claim in his Capacity as Teacher (Count II)

■ Defendants contend that Count II of plaintiffs' complaint should be dismissed because plaintiff Steven Case has failed to establish a constitutional claim for infringement on his "academic freedom." A public school teacher's academic freedom concerns the teacher's right to express views and associate with others. *Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 287, 104 S.Ct. 1058, 1067, 79 L.Ed.2d 299 (1984).

■ Plaintiffs agree that defendants' removal of *Annie on My Mind* from the school libraries is not actionable pursuant to a claim of "academic freedom" by plaintiff Steven Case in his capacity as a teacher in the Olathe School District. Instead, plaintiff Steven Case's claims are based on the same theories as Count I (the right receive information and ideas; fair procedures for book removal; and freedom from restriction on access for ideological reasons).

There is some support for a teacher's standing to challenge a book removal. *See Salvail v. Nashua Bd. of Educ.*, 469 F.Supp. 1269 (D.N.H.1979) (faculty subclass was proper plaintiff); *Right to Read Defense Committee v. School Committee*, 454 F.Supp. 703 (D.Mass1978) (plaintiffs included librarian and teacher). The court will allow plaintiff Steven Case's claim in Count II to stand or fall based on the court's resolution of Count I and IV discussed above. The cross motions for summary judgment on Count II are denied.

## C. Predistribution Review of Student Fliers (Count III)

Plaintiffs Amanda Greb, Rebekka Kamberg and Jon Stonger seek declaratory and injunctive relief based on unconstitutional predistribution review of student-written, non-school sponsored materials. Plaintiff Amanda Greb sought to distribute fliers informing students of Dr. Wimmer's and the School Board's decision to remove *Annie on My Mind* from the school libraries. The school principal, Dr. Ghosey, questioned her about the content of the flier and how she proposed to distribute it.

Plaintiffs assert that the series of meetings between Ms. Greb and Dr. Ghosey about the fliers establish an unconstitutional policy of predistribution review. *See Burch v. Barker,* 861 F.2d 1149, 1155 (9th Cir.1988) (Prior review of all written communications for possible censorship violative of the First Amendment if overly broad and inadequately focused on avoidance of disruption and interference with school discipline.); *Rivera v. East Otero School Dist.,* 721 F.Supp. 1189 (D.Colo.1989). Defendants contend that Count III should be dismissed because plaintiffs lack standing and the claim is moot.

### 1. Jurisdiction: Standing/Mootness

#### (a) Plaintiffs Amanda Greb and Rebekka Kamberg

■ Plaintiffs Amanda Greb and Rebekka Kamberg have graduated from high school and agree that their claims are now moot. Accordingly, their claim in Count III must be dismissed.

#### (b) Plaintiff Jon Stonger

Plaintiff Jon Stonger is a sophomore at Olathe South High School, but he was not a student at the High School when the alleged constitutional violation occurred and he did not participate in any flier distribution regarding the removal of *Annie on My Mind* from the school libraries.

Because plaintiff Jon Stonger was not involved in any actual attempt to distribute fliers, his challenge of the "predistribution policy" is to the face of the policy, and not as it is applied. *See Nitzberg v. Parks,* 525 F.2d

378, 380 n. 1 (4th Cir.1975). He must first establish that such a policy exists in order to make a facial challenge. *See McIntire v. Bethel School,* 804 F.Supp. 1415, 1421–22 (W.D.Okla.1992). Defendants deny that any policy of predistribution review exists.

Plaintiff alleges that the predistribution policy is an unwritten policy implemented by defendant Dr. Ghosey which requires Dr. Ghosey's approval of all student-written, non-school sponsored materials before distribution.

■ There are at least two problems with the claim in Count III as it stands today. First, because the policy is unwritten and defendants have denied that it exists, plaintiff must establish its existence based on the factual occurrences surrounding Plaintiff Amanda Greb's distribution of the book banning flier. Taking the facts in the light most favorable to plaintiff, the court does not believe that a policy can be established by the one isolated incident. Second, Dr. Ghosey is no longer the school principal. Thus, even if he did have such a policy, the issue is now moot because plaintiff Jon Stonger is no longer subject to the policy. There has been no evidence presented that any other school administrator has a predistribution review policy. The court concludes that Count III of plaintiffs' complaint should be dismissed. Count III contains the only claim against defendant Dr. Ghosey. Accordingly, defendant Dr. Ghosey is dismissed from the case.

### IV. Motion to Exclude Defendants' Expert Witnesses

Plaintiffs move to exclude two of defendants expert witnesses: Harold M. Voth, M.D., a psychiatrist, and Jared P. Pingleton, Psy.D., a psychologist. Plaintiffs also move to strike the expert witness reports of these two witnesses.

Plaintiffs make two arguments in support of their motion. First, plaintiffs contend that the proffered expert witness testimony is not relevant to the issues presented in the case. Second, plaintiffs argue that the expert testimony fails to meet the admissibility requirements of Fed.R.Evid. 702 and 703 and under *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Although the record in its present state raises doubts, the expert testimony may be relevant to the issues remaining for trial in the case. The court will be better able to rule on the relevance of the testimony at trial. Because the case is to be tried to the court, the court finds that plaintiffs will not be prejudiced by the denial of the motion to exclude. Plaintiffs are free to renew their relevancy objection during the testimony of the expert witnesses at trial.

The court also rejects plaintiffs motion to exclude on the basis of Rules 702 and 703 and *Daubert.* Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

In *Daubert,* the Court held that the standard for the admission of scientific evidence is not the "general acceptance standard" under *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), but rather is a more liberal standard under Federal Rule of Evidence 702.

The court will not exclude the expert witness testimony at this time under *Daubert.* Plaintiffs have not convinced the court that the proposed testimony does not meet the requirements of the Federal Rules and *Daubert.* In addition, little if any judicial economy would result from exclusion of the evidence. Even if the testimony were excluded, defendants would be allowed to make an offer of proof at a hearing or at trial. Again, because this is a trial to the court, the court will be able to evaluate the admissibility at the time of trial without the presence of a jury. Accordingly, plaintiffs' motion to exclude is denied.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. 115) is granted in part and denied in part. Count III of plaintiffs' complaint is dismissed. Defendant Dr. Lowell Ghosey is dismissed from the case.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment (Doc. 118) is denied.

IT IS FURTHER ORDERED that the joint motion for hearing on the cross motions for summary judgment (Doc. 145) is denied.

IT IS FURTHER ORDERED that plaintiffs' motion to exclude the testimony of defendants' expert witnesses and to strike defendants' expert witness report (Doc. 111) is denied.

IT IS FURTHER ORDERED that plaintiffs' motion for leave to file a supplemental reply in support of the motion to exclude the testimony of defendants' expert witnesses and to strike defendants' expert witness report (Doc. 144) is denied.

**IT IS SO ORDERED.**