413 U.S. 139 (1973)
UNITED STATES
v.
ORITO
No. 70-69.
Supreme Court of the United States.
Argued January 19, 1972.
Reargued November 7, 1972.
Decided June 21, 1973
APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN
Solicitor General Griswold reargued the cause for the United States. With him on the brief were Acting Assistant Attorney General Petersen, Jerome M. Feit, and Roger A. Pauley. R. Kent Greenawalt argued the cause for the United States on the original argument.
James M. Shellow reargued the cause for appellee. With him on the brief was James A. Walrath.[*]
*140 MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.
Appellee Orito was charged in the United States District Court for the Eastern District of Wisconsin with a violation of 18 U. S. C. § 1462[1] in that he did "knowingly transport and carry in interstate commerce from San Francisco . . . to Milwaukee . . . by means of a common carrier, that is, Trans-World Airlines and North Central Airlines, copies of [specified] obscene, lewd, lascivious, and filthy materials . . . ." The materials specified included some 83 reels of film, with as many as eight to 10 copies of some of the films. Appellee moved to dismiss the indictment on the ground that the statute violated his First and Ninth Amendment rights.[2] The District Court granted his motion, holding that the statute was unconstitutionally overbroad since it failed to distinguish between "public" and "non-public" transportation of obscene material. The District Court interpreted this Court's decisions in Griswold v. Connecticut, 381 U. S. 479 (1965); Redrup v. New York, 386 U. S. 767 (1967); and Stanley v. Georgia, 394 U. S. 557 (1969), to establish *141 the proposition that "non-public transportation" of obscene material was constitutionally protected.[3]
Although the District Court held the statute void on its face for overbreadth, it is not clear whether the statute was held to be overbroad because it covered transportation intended solely for the private use of the transporter, or because, regardless of the intended use of the material, the statute extended to "private carriage" or "nonpublic" transportation which in itself involved no risk of exposure to children or unwilling adults. The United States brought this direct appeal under former 18 U. S. C. § 3731 (1964 ed.) now amended, Pub. L. 91-644, § 14 (a), 84 Stat. 1890. See United States v. Spector, 343 U. S. 169, 171 (1952).
The District Court erred in striking down 18 U. S. C. § 1462 and dismissing appellee's indictment on these "privacy" grounds. The essence of appellee's contentions is that Stanley has firmly established the right to possess obscene material in the privacy of the home and that this creates a correlative right to receive it, transport it, or distribute it. We have rejected that reasoning. This case was decided by the District Court before our decisions in United States v. Thirty-seven Photographs, 402 U. S. 363 (1971), and United States v. Reidel, 402 U. S. 351 (1971). Those holdings negate the idea that some zone of constitutionally protected privacy *142 follows such material when it is moved outside the home area protected by Stanley.[4]United States v. Thirty-seven Photographs, supra, at 376 (opinion of WHITE, J.). United States v. Reidel, supra, at 354-356. See United States v. Zacher, 332 F. Supp. 883, 885-886 (ED Wis. 1971). But cf. United States v. Thirty-seven Photographs, supra, at 379 (STEWART, J., concurring).
The Constitution extends special safeguards to the privacy of the home, just as it protects other special privacy rights such as those of marriage, procreation, motherhood, child rearing, and education. See Eisenstadt v. Baird, 405 U. S. 438, 453-454 (1972); Loving v. Virginia, 388 U. S. 1, 12 (1967); Griswold v. Connecticut, supra, at 486; Prince v. Massachusetts, 321 U. S. 158, 166 (1944); Skinner v. Oklahoma, 316 U. S. 535, 541 (1942); Pierce v. Society of Sisters, 268 U. S. 510, 535 (1925). But viewing obscene films in a commercial theater open to the adult public, see Paris Adult Theatre I v. Slaton, ante, at 65-67, or transporting such films in common carriers in interstate commerce, has no claim to such special consideration.[5] It is hardly necessary to catalog the myriad activities that may be lawfully conducted *143 within the privacy and confines of the home, but may be prohibited in public. The Court has consistently rejected constitutional protection for obscene material outside the home. See United States v. 12 200-ft. Reels of Film, ante, at 126-129; Miller v. California, ante, at 23; United States v. Reidel, supra, at 354-356 (opinion of WHITE, J.); id., at 357-360 (Harlan, J., concurring); Roth v. United States, 354 U. S. 476, 484-485 (1957).
Given (a) that obscene material is not protected under the First Amendment, Miller v. California, supra; Roth v. United States, supra, (b) that the Government has a legitimate interest in protecting the public commercial environment by preventing such material from entering the stream of commerce, see Paris Adult Theatre I, ante, at 57-64, and (c) that no constitutionally protected privacy is involved, United States v. Thirty-seven Photographs, supra, at 376 (opinion of WHITE, J.), we cannot say that the Constitution forbids comprehensive federal regulation of interstate transportation of obscene material merely because such transport may be by private carriage, or because the material is intended for the private use of the transporter. That the transporter has an abstract proprietary power to shield the obscene material from all others and to guard the material with the same privacy as in the home is not controlling. Congress may regulate on the basis of the natural tendency of material in the home being kept private and the contrary tendency once material leaves that area, regardless of a transporter's professed intent. Congress could reasonably determine such regulation to be necessary to effect permissible federal control of interstate commerce in obscene material, based as that regulation is on a legislatively determined risk of ultimate exposure to juveniles or to the public and the harm that exposure *144 could cause. See Paris Adult Theatre I v. Slaton, ante, at 57-63. See also United States v. Alpers, 338 U. S. 680, 681-685 (1950); Brooks v. United States, 267 U. S. 432, 436-437 (1925); Weber v. Freed, 239 U. S. 325, 329-330 (1915). "The motive and purpose of a regulation of interstate commerce are matters for the legislative judgment upon the exercise of which the Constitution places no restriction and over which the courts are given no control. McCray v. United States, 195 U. S. 27; Sonzinsky v. United States, 300 U. S. 506, 513 and cases cited." United States v. Darby, 312 U. S. 100, 115 (1941). "It is sufficient to reiterate the well-settled principle that Congress may impose relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the means of promoting or spreading evil, whether of a physical, moral or economic nature." North American Co. v. SEC, 327 U. S. 686, 705 (1946).[6]
*145 As this case came to us on the District Court's summary dismissal of the indictment, no determination of the obscenity of the material involved has been made. Today, for the first time since Roth v. United States, supra, we have arrived at standards accepted by a majority of this Court for distinguishing obscene material, unprotected by the First Amendment, from protected free speech. See Miller v. California, ante, at 23-25; United States v. 12 200-ft. Reels of Film, ante, at 130 n. 7. The decision of the District Court is therefore vacated and the case is remanded for reconsideration of the sufficiency of the indictment in light of Miller v. California, supra; United States v. 12 200-ft. Reels, supra; and this opinion.
Vacated and remanded.
MR. JUSTICE DOUGLAS, dissenting.
We held in Stanley v. Georgia, 394 U. S. 557, that an individual reading or examining "obscene" materials in the privacy of his home is protected against state prosecution by reason of the First Amendment made applicable to the States by reason of the Fourteenth. We said:
"These are the rights that appellant is asserting in the case before us. He is asserting the right to read or observe what he pleasesthe right to satisfy his intellectual and emotional needs in the privacy of his own home. He is asserting the right to be free from state inquiry into the contents of his library. Georgia contends that appellant does not have these rights, that there are certain types of materials that the individual may not read or even possess. Georgia justifies this assertion by arguing that the *146 films in the present case are obscene. But we think that mere categorization of these films as `obscene' is insufficient justification for such a drastic invasion of personal liberties guaranteed by the First and Fourteenth Amendments. Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds." Id., at 565.
By that reasoning a person who reads an "obscene" book on an airline or bus or train is protected. So is he who carries an "obscene" book in his pocket during a journey for his intended personal enjoyment. So is he who carries the book in his baggage or has a trucking company move his household effects to a new residence. Yet 18 U. S. C. § 1462[*] makes such interstate carriage unlawful. Appellee therefore moved to dismiss the indictment on the ground that § 1462 is so broad as to cover "obscene" material designed for personal use.
The District Court granted the motion, holding that § 1462 was overbroad and in violation of the First Amendment.
The conclusion is too obvious for argument, unless we are to overrule Stanley. I would abide by Stanley and affirm the judgment dismissing the indictment.
*147 MR. JUSTICE BRENNAN, with whom MR. JUSTICE STEWART and MR. JUSTICE MARSHALL join, dissenting.
We noted probable jurisdiction to consider the constitutionality of 18 U. S. C. § 1462, which makes it a federal offense to "[bring] into the United States, or any place subject to the jurisdiction thereof, or knowingly [use] any express company or other common carrier, for carriage in interstate or foreign commerce(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character." Appellee was charged in a one-count indictment with having knowingly transported in interstate commerce over 80 reels of allegedly obscene motion picture film. Relying primarily on our decision in Stanley v. Georgia, 394 U. S. 557 (1969), the United States District Court for the Eastern District of Wisconsin dismissed the indictment, holding the statute unconstitutional on its face:
"To prevent the pandering of obscene materials or its exposure to children or to unwilling adults, the government has a substantial and valid interest to bar the non-private transportation of such materials. However, the statute which is now before the court does not so delimit the government's prerogatives; on its face, it forbids the transportation of obscene materials. Thus, it applies to non-public transportation in the absence of a special governmental interest. The statute is thus overbroad, in violation of the first and ninth amendments, and is therefore unconstitutional." 338 F. Supp. 308, 311 (ED Wis. 1970).
Under the view expressed in my dissent today in Paris Adult Theatre I v. Slaton, ante, p. 73, it is clear that the statute before us cannot stand. Whatever the extent of *148 the Federal Government's power to bar the distribution of allegedly obscene material to juveniles or the offensive exposure of such material to unconsenting adults, the statute before us is clearly overbroad and unconstitutional on its face. See my dissent in Miller v. California, ante, p. 47. I would therefore affirm the judgment of the District Court.
NOTES
[*] Melvin L. Wulf and Joel M. Gora filed a brief for the American Civil Liberties Union as amicus curiae urging affirmance.
[1] Title 18 U. S. C. § 1462 provides in pertinent part:

"Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce
"(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; . . .
. . . . .
"Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter."
[2] Appellee also moved to dismiss the indictment on the grounds that 18 U. S. C. § 1462 does not require proof of scienter. That issue was not reached by the District Court and is not before us now.
[3] The District Court stated:

"By analogy, it follows that with the right to read obscene matters comes the right to transport or to receive such material when done in a fashion that does not pander it or impose it upon unwilling adults or upon minors.
. . . . .
"I find no meaningful distinction between the private possession which was held to be protected in Stanley and the non-public transportation which the statute at bar proscribes." 338 F. Supp. 308, 310 (1970).
[4] "These are the rights that appellant is asserting in the case before us. He is asserting the right to read or observe what he pleasesthe right to satisfy his intellectual and emotional needs in the privacy of his own home." Stanley v. Georgia, 394 U. S. 557, 565 (1969). (Emphasis added.)
[5] The Solicitor General indicates that the tariffs of most, if not all, common carriers include a right of inspection. Resorting to common carriers, like entering a place of public accommodation, does not involve the privacies associated with the home. See United States v. Thirty-seven Photographs, 402 U. S. 363, 376 (1971) (opinion of WHITE, J.); United States v. Reidel, 402 U. S. 351, 359-360 (1971) (Harlan, J., concurring); Poe v. Ullman, 367 U. S. 497, 551-552 (1961) (Harlan, J., dissenting); Miller v. United States, 431 F. 2d 655, 657 (CA9 1970); United States v. Melvin, 419 F. 2d 136, 139 (CA4 1969).
[6] "Congress can certainly regulate interstate commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other States from the State of origin. In doing this it is merely exercising the police power, for the benefit of the public, within the field of interstate commerce. . . . In the Lottery Case, 188 U. S. 321, it was held that Congress might pass a law punishing the transmission of lottery tickets from one State to another, in order to prevent the carriage of those tickets to be sold in other States and thus demoralize, through a spread of the gambling habit, individuals who were likely to purchase. . . . In Hoke v. United States, 227 U. S. 308 and Caminetti v. United States, 242 U. S. 470, the so-called White Slave Traffic Act, which was construed to punish any person engaged in enticing a woman from one State to another for immoral ends, whether for commercial purposes or otherwise, was valid because it was intended to prevent the use of interstate commerce to facilitate prostitution or concubinage, and other forms of immorality. . . . In Weber v. Freed, 239 U. S. 325, it was held that Congress had power to prohibit the importation of pictorial representations of prize fights designed for public exhibition, because of the demoralizing effect of such exhibitions in the State of destination." Brooks v. United States, 267 U. S. 432, 436-437 (1925).
[*] "Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce

"(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character."