**UNITED STATES of America, Plaintiff-Appellee.**

v.

**James Norman HILL, Defendant-Appellant.**

**No. 73–2922.**

United States Court of Appeals, Fifth Circuit.

Sept. 11, 1974.

Rehearing and Rehearing En Banc Denied Nov. 1, 1974.

---

Joel Hirschhorn, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Robert N. Reynolds, Asst. U. S. Atty., Miami, Fla., Robert D. Keefe, Dept. of Justice, Crim. Div., Government Regulations Section, Washington, D. C., for plaintiff-appellee.

Before MOORE *, AINSWORTH and RONEY, Circuit Judges.

RONEY, Circuit Judge:

On February 22, 1973, agents for the Federal Bureau of Investigation, acting on a tip from an informer, arrested James Norman Hill in the Miami International Airport. Immediately prior to his arrest, Hill had deplaned from a Califoria flight and had claimed his "baggage," which contained 623 reels of 8mm non-sound color motion picture film depicting a variety of explicit sexual acts. When the grand jury returned its two count indictment against Hill for violations of 18 U.S.C.A. § 1462[1] and § 1465[2] on May 3, 1973, the Supreme Court had not yet announced its decisions in the *Miller* group of obscenity

cases,[3] so that the *Roth-Memoirs* [4] test still prevailed. The attorneys in the instant case, however, agreed to postpone Hill's jury trial until the Supreme Court decided the pending *Miller* cases. With instructions that incorporated the language of the *Miller* decisions, the jury found Hill guilty as to both counts of the indictment. After ruling on the obscenity *vel non* of the films, the District Court adjudged Hill guilty and sentenced him to three years confinement on each count, to run concurrently, and fined him $10,000, $5,000 on each count. We affirm.

On appeal, Hill presents several grounds for the reversal of his conviction. The most significant legal argument which Hill advances is his contention that he was constitutionally entitled to be tried under the *Roth-Memoirs* standard of obscenity and that the trial court, by basing its instructions on the *Miller* test, subjected him to an *ex post facto* application of the law prohibited by Article I, Section 9 of the United States Constitution and deprived him of due process of law under the Fifth Amendment.

---

* Hon. Leonard P. Moore, Senior Circuit Judge of the Second Circuit, sitting by designation.

1. 18 U.S.C.A. § 1462 reads in pertinent part:
Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—
(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or

. . . . .

Whoever knowingly takes from such express company or other common carrier any matter or thing the carriage of which is here made unlawful—
Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

2. 18 U.S.C.A. § 1465 reads in pertinent part:
Whoever knowingly transports in interstate or foreign commerce for the purpose of sale or distribution any obscene, lewd,

lascivious, or filthy book, pamphlet, picture, film, . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both.
The transportation as aforesaid of two or more copies of any publication or two or more of any article of the character described above, or a combined total of five such publications and articles, shall create a presumption that such publications or articles are intended for sale or distribution, but such presumption shall be rebuttable.

3. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L. Ed.2d 492 (1973); United States v. 12 200-Ft. Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L. Ed.2d 513 (1973).

4. Roth v. United States, 354 U.S. 476, 77 S. Ct. 1304, 1 L.Ed.2d 1498 (1957); Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966).

In handling the post-*Miller* appeals of federal obscenity convictions where the trial was held under the *Roth-Memoirs* test, this Court has reviewed the materials under both the *Roth-Memoirs* and the *Miller* standards to assure defendants of the benefit of both tests as a matter of constitutional review. United States v. Thevis, 484 F.2d 1149 (5th Cir. 1973), cert. denied, —— U.S. ——, 94 S. Ct. 3222, 41 L.Ed.2d 1170 [No. 73–1075, July 25] (1974). This Court, however, has not decided the question of whether a defendant, arrested and indicted under the *Roth-Memoirs* standard, is subjected to an *ex post facto* application of the law and deprived of due process of law when the jury is instructed to judge the factual content of the material under the *Miller* test. We find, however, that we do not have to decide whether a charge based solely on the language in *Miller* would require a reversal of Hill's conviction because we view the instructions as sufficient under both tests.

The defendant argues that the two standards are enunciated as follows:

*The Roth-Memoirs Standard:*

1. Dominant theme of material taken as a whole appeals to the prurient interest in sex;

2. The material is patently offensive because it affronts contemporary community standards relating to the representation of sexual matters; and

3. The material is utterly without redeeming social value.

*The Miller Standard:*

1. Whether the average person applying contemporary community standards would find that the work taken as a whole appeals to the prurient interest in sex;

2. Whether the work depicts or describes in a patently offensive way sexual conduct specifically defined by the applicable law; and

3. Whether the material lacks serious literary, artistic, political or scientific value.

Assuming without deciding that something other than the varying semantics of different words to articulate the same idea is involved in the *Miller* decision and that it does articulate a standard different than *Roth* by which a jury could reach different conclusions on the material involved in this case, an examination on the charge to the jury reveals that the defendant was given the benefit of both standards. Although the Court first instructed the jury that the test of whether the material was obscene depended on the existence of the three elements of the *Miller* standard, it then went on to satisfactorily, we think, instruct the jury as to the social value element found in *Roth-Memoirs*. The Court said:

> Freedom of expression is fundamental to our society and has contributed much to the development and wellbeing of our free society. In the exercise of the constitutional right to free expression which all of us enjoy, sex may be portrayed and the subject of sex may be discussed, freely and publicly, so long as the expression does not fall within the area of obscenity. However, the constitutional right to free expression does not extend to the expression of that which is obscene.

> Furthermore, obscenity is excluded from constitutional protection because it is without social value. Of course, the mere fact that material deals with sex does not mean that it cannot have value to society. Indeed, such material can have social importance if it portrays sex in a manner that advocates ideas or that has literary, scientific or artistic value. It is for you to determine whether the materials at issue in this case are of value to society.

Although the Court did not use the words "utterly without redeeming social value" as expressed in *Memoirs*, we do not deem it necessary that a jury instruction recite the precise words of judicial opinions in order to convey the ideas therein expressed. Defendant would have us hold that the law is re-

vealed to the jury by some magical incantation of the exact words of a legal opinion, and anything short of that is reversible error. We think the above passage of the Court's charge, read with the instructions as a whole, was sufficient to inform the jury that they should not convict the defendant if they found the materials to be of any social value.

■ The precise effect of the Court's instructions to the jury in the instant case was to secure for the defendant the same protection at trial as to the facts which a *Thevis* review by this Court affords him on appeal as a constitutional matter. By charging the jury under both the *Miller* and the *Roth-Memoirs* tests of obscenity, the District Court gave the defendant the benefit of both standards. We need not involve ourselves in the controversy over whether the materials should be judged under a local, state, or national standard. The materials here are not constitutionally protected under any standard. The defendant requested that the jury be instructed that its judgment should be based on a state standard, such an instruction was given, and the defendant cannot now assert any error in this regard.

■ Although the point was not argued to us, we have determined on a review of the materials that they are not constitutionally protected under either the *Roth-Memoirs* standard or the *Miller* standard. United States v. Thevis, 484 F.2d 1149 (5th Cir. 1973), cert. denied, —— U.S. ——, 94 S.Ct. 3222, 41 L.Ed.2d 1170 [No. 73–1075, July 25] (1974). The several films not being the subject of individual counts, the unprotected obscenity of any one of them would be sufficient to support the conviction.

The rest of the points raised on appeal have either been decided contrary to the defendant's position in controlling cases of this Court or the Supreme Court, or a review of the record reveals them to be without merit. We decide each point in the order in which it was asserted by defendant.

■ The defendant complains that the failure to add to the master jury wheel the names of newly registered voters since 1968 or 1969 occasioned the systematic exclusion of potential veniremen of certain "cognizable groups," namely young adults between the ages of 21 and 25 years and newly arrived Latin Americans. This argument falls under previous decisions of this Court, United States v. Pentado, 463 F.2d 355 (5th Cir.), cert. denied, Ocha v. United States, 409 U.S. 1079, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972); Noa v. United States, 410 U.S. 909, 93 S.Ct. 963, 35 L. Ed.2d 271 (1973), and United States v. Kuhn, 441 F.2d 179 (5th Cir. 1971), the authority of which has now been bolstered by the recent Supreme Court decision in Hamling v. United States, —— U.S. ——, 94 S.Ct. 2887, 41 L.Ed.2d 590 [No. 73–507, June 24] (1974).

Faced with a similar argument in *Hamling,* the Supreme Court said:

Congress could reasonably adopt procedures which, while designed to assure that "an impartial jury is drawn from a cross-section of the community," Thiel v. Southern Pacific Co., 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (1946); Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84 (1940), at the same time take into account practical problems in judicial administration. Unless we were to require the daily refilling of the jury wheel, Congress may necessarily conclude that some periodic delay in updating the wheel is reasonable to permit the orderly administration of justice. Invariably of course, as time goes on, the jury wheel will be more and more out of date, especially near the end of the statutorily prescribed time period for updating the wheel. But if the jury wheel is not discriminatory when completely updated at the time of each refilling, a prohibited "purposeful discrimination" does not arise near the end of the period simply because the young and other persons have belatedly become eligible for jury service by becoming

registered voters. Whitus v. Georgia, 385 U.S. 545, 551, 87 S.Ct. 643, 17 L. Ed.2d 599 (1967); *see* Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L. Ed. 1244 (1953); Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972);

—— U.S. at ——, 94 S.Ct. at 2918.

■ Contrary to what the defendant argues that the law should be both sections under which he was convicted, 18 U.S.C.A. § 1462 and § 1465, have been held to be constitutional against a charge of vagueness and overbreadth. United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); United States v. New Orleans Book Mart, Inc., 490 F.2d 73 (5th Cir. 1974); United States v. Thevis, 484 F.2d 1149 (5th Cir. 1973), cert. denied, —— U.S. ——, 94 S. Ct. 3222, 41 L.Ed.2d 1170 [No. 73–1075, July 25] (1974).

Hill's appeal from the denial of the motion to suppress is based on his contention that the affidavit was insufficient to support the issuance of a warrant for arrest. Assuming a legal arrest, the search was constitutional.

■■ An affidavit based solely upon an unidentified informer's tip may provide the probable cause basis for the issuance of a warrant if the affidavit contains objective assertions from which a detached magistrate may conclude that the hearsay is credible. United States v. Sellers, 483 F.2d 37 (5th Cir. 1973), cert. denied, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974); *see* Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The affidavit upon which the Magistrate in the case at bar issued the arrest warrant was legally sufficient under the *Sellers* test. Paragraphs 2 through 4 of the affidavit allege adequate facts for the Magistrate to determine the informant's source of information, the reliability of that information, and the reliability of the informant in the past.

■ We find no abuse of discretion in the court's failure to ask certain questions on voir dire proposed by defendant, to submit special interrogatories to the jury, or to allow closing arguments to exceed twenty minutes in length.

■ There was no error in letting the jury view four films and deliberate on 24 titles. The films were all the subject of the same two charges and it was only necessary for conviction that the jury find one of the films obscene, even if it found that all of the others were not. There is no indication that the jury's verdict hinged on the unseen films.

■ There was no error in refusing to let the defense show that Florida did not have a valid, enforceable obscenity law at the time of Hill's interstate travel. The community *standard* is not necessarily gauged by the state law, and the fact that a three-judge federal court in Meyer v. Austin, 319 F. Supp. 457 (M.D.Fla.1970), app. dismissed, 413 U.S. 902, 93 S.Ct. 3029, 37 L.Ed.2d 1017 (1973), declared Florida Statutes § 847.011 (1967) unconstitutional was not relevant to this federal obscenity prosecution.

■ Defendant argues that the trial court erred in its failure to make proper findings of law as to the obscenity *vel non* of the films in the instant case. We find, however, that the trial judge made quite explicit findings when he stated,

> I think clearly, under the opinions handed down last Thursday, you want to know if this is obscene. I cannot imagine any test the Supreme Court has ever enunciated or promulgated by which the material here would not be classified as obscene. It is hard core to its flintiest hardness. No way around that interpretation.

■ The trial court did not err in denying defendant's motion for mis-

trial. Ordinarily, a motion for mistrial is addressed to the sound discretion of the trial court. United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); Rothaus v. United States, 319 F.2d 528 (5th Cir. 1963). On review, we are unable to say that the trial judge abused his discretion in denying defendant's motion.

■■■■■ Appellant Hill contends that the trial court erred in refusing to admit into evidence *The Report of the Commission on Obscenity and Pornography*. A trial court has wide discretion in determining the relevance and materiality of evidence and its ruling should not be disturbed in the absence of an abuse of discretion. United States v. Garr, 461 F.2d 487 (5th Cir.), cert. denied, 409 U.S. 880, 93 S.Ct. 170, 34 L. Ed.2d 135 (1972); O'Brien v. United States, 411 F.2d 522 (5th Cir. 1969). In the instant case, the Court denied the admission of the Report into evidence on the basis of United States v. Manarite, 448 F.2d 583 (2d Cir.), cert. denied, 404 U.S. 947, 92 S.Ct. 298, 30 L.Ed.2d 264 (1971). The Court in *Manarite* found that the trial court had properly excluded the work ". . . as in large part irrelevant and as usurping the function of the jury." 448 F.2d at 593. On the facts before us, we are unable to say that the District Court abused its discretion in excluding *The Report of the Commission on Obscenity and Pornography* from evidence in the instant trial.

■■■■■ The evidence was sufficient for the jury to determine that the defendant had general knowledge that the material is sexually oriented, the only scienter required for conviction under 18 U.S.C.A. § 1462 or § 1465. United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed. 2d 513 (1973); United States v. Groner, 494 F.2d 499 (5th Cir. 1974); United States v. New Orleans Book Mart, Inc., 490 F.2d 73 (5th Cir. 1974); United

States v. Thevis, 484 F.2d 1149 (5th Cir. 1973), cert. denied, —— U.S. ——, 94 S. Ct. 3222, 41 L.Ed.2d 1170 [No. 73–1075, July 25] (1974). *See also* Hamling v. United States, —— U.S. ——, 94 S.Ct. 2887, 41 L.Ed.2d 590] (1974).

■■■■■ It is established that the Government is not required to produce expert testimony in obscenity cases when the materials themselves are placed in evidence. Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). We find without merit the argument that, despite this principle, expert testimony should have been required of the Government in the case *sub judice* because the materials are of a bizarre nature and involved deviant sexual conduct which is not within the common knowledge or full understanding of the average person, or which would not or could not appeal to the average person.

■■■■■ Defendant contends that his conviction and sentence for violation of both 18 U.S.C.A. § 1462 and § 1465 constitute multiple punishment for a single act in violation of the constitutional prohibition against double jeopardy and cruel and unusual punishment. This Circuit follows the "different evidence" test, *see* United States v. Costello, 483 F. 2d 1366 (5th Cir. 1973); United States v. Young, 482 F.2d 993 (5th Cir. 1973), under which convictions for separate offenses arising from a single fact pattern are upheld if each statute proscribing the conduct requires proof of different facts and different elements as to each separate offense. In the instant case, the statutes under which Hill was convicted and sentenced meet the "different evidence" test: section 1462 requires the use of a common carrier, section 1465 does not, and section 1465 requires the intent to sell or distribute, section 1462 does not.

Affirmed.