UNITED STATES, Appellee

v.

Ryan A. BOWERSOX, Specialist
U.S. Army, Appellant

No. 12-0398

Crim. App. No. 20100580

United States Court of Appeals for the Armed Forces

Argued December 3, 2012

Decided April 2, 2013

RYAN, J., delivered the opinion of the Court, in which BAKER, C.J., ERDMANN, J., and EFFRON, S.J., joined.  STUCKY, J., filed a separate dissenting opinion.


Counsel

For Appellant:  Captain James P. Curtin (argued); Colonel Patricia A. Ham, Lieutenant Colonel Imogene M. Jamison, and Major Richard E. Gorini (on brief); Captain Matthew T. Grady.

For Appellee:  Captain Bradley M. Endicott (argued); Lieutenant Colonel Amber J. Roach and Major Catherine L. Brantley (on brief); Captain Stephen E. Latino.


Military Judge:  Gary J. Brockington


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

Contrary to his pleas, a military judge sitting as a general court-martial convicted Appellant of two specifications of knowingly possessing a total of 224 obscene visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 1466A(b)(1) (2006), incorporated by clause 3, Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006).  Appellant was acquitted of an additional specification of wrongfully and knowingly possessing and viewing child pornography in violation of Article 134, UCMJ.  The adjudged and approved sentence provided for a bad-conduct discharge, confinement for four months, forfeiture of all pay and allowances, and reduction to E-1.

The United States Army Court of Criminal Appeals (ACCA) reviewed the special findings of the military judge with respect to each depiction but affirmed the findings with respect to only 193 depictions, concluding that the remaining depictions either were not obscene or did not depict sexually explicit conduct and, therefore, were not factually sufficient to establish violations of § 1466A(b)(1).  United States v. Bowersox, 71 M.J. 561, 563 (A. Ct. Crim. App. 2012).  The ACCA then reassessed and affirmed the approved sentence.  Id. at 565.

2

United States v. Bowersox, 12-0398/AR

We granted review of the following issue:

> WHETHER APPELLANT'S CONVICTION OF VIOLATING 18 U.S.C.
> § 1466A(b)(1), AS IMPORTED THROUGH CLAUSE 3 OF ARTICLE 134,
> UCMJ, IS UNCONSTITUTIONAL AS APPLIED TO HIM BECAUSE THE
> MINORS DEPICTED IN THE MATERIAL AT ISSUE WERE NOT ACTUAL
> MINORS.  SEE ASHCROFT v. FREE SPEECH COALITION, 535 U.S.
> 234 (2002); UNITED STATES v. WHORLEY, 550 F.3d 326 (4th
> Cir. 2008).[1]

First, we hold that § 1466A(b)(1) applies to Appellant's conduct because the statute expressly provides that the minors depicted need not actually exist.  18 U.S.C. § 1466A(c) ("It is not a required element of any offense under this section that the minor depicted actually exist.").  Second, § 1466A(b)(1) is constitutional as applied to Appellant because the statute requires that the proscribed visual depiction be obscene, 18 U.S.C. § 1466A(b)(1)(B) ("is obscene"), and the limited holding of Stanley v. Georgia, 394 U.S. 557, 568 (1969), which recognized an individual's right to possess obscene materials "in the privacy of his own home," does not extend to Appellant's possession of obscene materials in his shared barracks room. For these reasons, the decision of the ACCA is affirmed.

## I.  FACTS

Appellant lived with Specialist (SPC) Andy Bryant in a shared military barracks room located on Fort Bragg, North Carolina.  One day in early February 2009, after entering the

---

[1] United States v. Bowersox, 71 M.J. 362 (C.A.A.F. 2012) (order granting review).

shared barracks room, SPC Bryant observed Appellant abruptly stand up, and step in front of his computer, obscuring SPC Bryant's view of the computer screen. SPC Bryant testified that he found Appellant's behavior "odd."

Shortly thereafter, Appellant asked SPC Bryant for the phone number of their superior, Sergeant (Sgt) Clark. When SPC Bryant asked Appellant why he wanted the phone number, Appellant said that he wanted to report a web site and asked SPC Bryant to come over and see the web site for himself. Appellant then showed SPC Bryant his computer screen, on which there were images of minors engaged in sexual activities. Appellant asked SPC Bryant if he should report the web site. SPC Bryant told Appellant to report the web site and left the room.

Approximately one week later, SPC Bryant asked Sgt Clark if Appellant had reported the web site; Appellant had not. After confronting Appellant, who feigned ignorance of the web site, SPC Bryant reported the incident to his first sergeant, who immediately sent him to Criminal Investigation Command (CID) to make an official report.

Appellant's shared barracks room was subject to inspection under Military Rule of Evidence (M.R.E.) 313(b), which authorizes "commanding officers to conduct inspections of their units -- 'as an incident of command' -- when 'the primary purpose . . . is to determine and to ensure the security,

military fitness, or good order and discipline of the unit,'" United States v. Jackson, 48 M.J. 292, 293 (C.A.A.F. 1998) (alteration in original) (quoting M.R.E. 313(b)), and may include "'an examination to locate and confiscate unlawful weapons and other contraband.'" Id. at 294 (quoting M.R.E. 313(b)). However, the "'primary purpose' of an inspection cannot be to 'obtain[] evidence for use in a trial by court-martial.'" Id. (alteration in original) (quoting M.R.E. 313(b)). Therefore, pursuant to CID regulations, Special Agent (SA) Jeremy Kamphuis obtained a verbal authorization from a military magistrate to search Appellant's room for computer electronic devices, and then obtained a warrant from the same magistrate the following day. During the authorized search, CID seized, among other things, Appellant's desktop and laptop computers.

The computers were sent to SA Kirk Ellis, the Computer Crimes Coordinator for the 10th MP Battalion, who conducted a search of the computers' hard drives. The search of the laptop computer's hard drive uncovered approximately twenty-seven images depicting minors engaged in sexual activities. The search of the desktop computer's hard drive uncovered approximately 318 images depicting minors engaged in sexual activities. None of the images found on Appellant's computers depicted real children. In a sworn statement made to CID,

Appellant admitted that he was "addict[ed] to Anime"[2] and, on multiple occasions, had viewed and downloaded anime images that depicted minors engaging in sexual activities.[3]

## II. THE ACCA OPINION

As relevant to the granted issue, the ACCA held that 18 U.S.C. § 1466A(b)(1) is constitutional as applied to Appellant because "the circumstances of [A]ppellant's case remove it from the circumscribed protections afforded in Stanley." Bowersox, 71 M.J. at 564. The lower court observed that "'[t]he threshold of a barracks/dormitory room does not provide the same sanctuary as the threshold of a private home.'" Id. (quoting United

---

[2] While Appellant described the images as "anime" in a sworn statement to CID they are more accurately described as realistic computer animation. Anime is "a style of animation originating in Japan that is characterized by stark colorful graphics depicting vibrant characters in action-filled plots often with fantastic or futuristic themes." Merriam-Webster's Collegiate Dictionary 49 (11th ed. 2008). In contrast, the images at issue depict real-looking children and adults engaged in sexual conduct. The images are created with such realism that they show expressions of pain and pleasure on the child participants' faces, the children's shadows on the ground, and even depict the leg hairs of the men engaging in sex with the children. While the record does not establish that these images portray real, living children, it does demonstrate that these images are far removed from the fanciful cartoon caricature commonly understood to be "anime."

[3] In his statement, Appellant described various files on his computer. One file consisted of "six minors (less than 10 years of age) in a multiracial setting with one adult at the end, all engaged in sexual acts." Other files consisted of: (1) "shotacon" images, which generally depict "two minor boys engaged in sexual activities," (2) "straight shotacon" images, which generally depict "animated girls who are older than the boys engaged in sexual activities," and (3) images of incest.

States v. Conklin, 63 M.J. 333, 337 (C.A.A.F. 2006)).  The ACCA

therefore concluded that "[t]here is no constitutionally

recognized right to possess" "obscene visual depictions of a

minor engaging in sexually explicit conduct . . . in a shared

barracks room in the special maritime and territorial

jurisdiction of the United States."[4]  Id.

III.  DISCUSSION

Appellant argues that § 1466A(b)(1) is unconstitutional as

applied to him both because none of the images found on his

computers were of real minors, and because the limited right to

possess obscenity in the privacy of one's own home, as

recognized in Stanley, 394 U.S. 557, extends to Appellant's

shared barracks room.  We disagree.

A.

First, Appellant claims that the application of

§ 1466A(b)(1) to his case is unconstitutional because the

statute requires that a real minor be depicted and no real

---

[4] The scope of 18 U.S.C. § 1466A is limited by subsection (b) to "[a]ny person . . . in a circumstance described in subsection (d)."  18 U.S.C. § 1466A(b).  The "circumstance" listed in subsection (d), as relevant to Appellant, is that "the offense is committed in the special maritime and territorial jurisdiction of the United States or in any territory or possession of the United States."  18 U.S.C. § 1466A(d)(5). Here, Appellant and SPC Bryant's shared barracks room is in building H-4812 on Fort Bragg, North Carolina.  No one disputes that Appellant's shared barracks room is in the "special maritime and territorial jurisdiction of the United States." See 18 U.S.C. § 7 (2006).

minors were depicted in the images found on Appellant's computers.

Under § 1466A(b)(1) and (d)(5), it is a criminal offense to "knowingly possess[]," "in the special maritime and territorial jurisdiction of the United States," "a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that . . . depicts a minor engaging in sexually explicit conduct[,] and . . . is obscene."[5]  18 U.S.C. § 1466A(b)(1), (d).

Contrary to Appellant's argument, § 1466A(b)(1) does not require proof that the depictions represent "real" minors. First, and most importantly, § 1466A(c) expressly states, "[i]t is not a required element of any offense under this section that the minor depicted actually exist."  Despite the clarity of this language, Appellant contends that it does not mean what it says, but rather means that Congress intended subsection (c) to "reliev[e] the Government from the burden of exhaustively searching the country to identify conclusively the children involved in the production of the child pornography."  Brief for Appellant at 9, United States v. Bowersox, No. 12-0398 (C.A.A.F. Aug. 28, 2012) (quoting United States v. Whorley, 550 F.3d 326,

---

[5] A minor is "any person under the age of eighteen years." 18 U.S.C. § 2256(1).  "Sexually explicit conduct" includes actual or simulated sexual intercourse, sodomy, masturbation, bestiality, sadistic or masochistic abuse, or lewd public behavior.  18 U.S.C. § 2256(2)(A).

351 (4th Cir. 2008) (Gregory, J., concurring in part and dissenting in part)).

Appellant's argument fails for at least two reasons. First, Congress provided equally clear and alternative language for doing exactly what Appellant describes when it defined an "identifiable minor" in another section of that chapter -- "[this definition] shall not be construed to require proof of the actual identity of the identifiable minor."  18 U.S.C. § 2256(9)(B) (emphasis added).  That is not the language Congress used in the statute before us.  See United States v. Wilson, 66 M.J. 39, 45-46 (C.A.A.F. 2008) ("'[Where] Congress includes particular language in one section of a statute but omits it in another section . . . it is generally presumed that Congress acts intentionally and purposely in the disparate . . . exclusion.'" (alteration in original) (quoting Russello v. United States, 464 U.S. 16, 23 (1983) (internal quotation marks omitted)).

Second, even if the words that a minor need not "actually exist," 18 U.S.C. § 1466A(c), are open to alternative interpretations, that they mean the depictions need not be of a real minor is further illustrated by the list of visual depictions prohibited under the statute, which specifically lists both drawings and cartoons.  See 18 U.S.C. § 1466A(b). Moreover, visual depictions are themselves defined to include a

9

"computer image or picture, or computer generated image or picture, whether made or produced by electronic, mechanical, or other means." 18 U.S.C. § 1466A(f)(1). Neither drawings nor cartoons nor computer-generated images necessarily or logically require a real minor. In our view, the express reference to "computer image or picture, or computer generated image or picture," and to drawings and cartoons, makes clear that the statute envisioned and made criminal the possession of precisely the type of depictions on which Appellant's conviction was based -- obscene, computer-generated images of minors engaged in sexually explicit conduct.

In sum, we agree with the Fourth Circuit's analysis of a related statutory subsection in United States v. Whorley:

> While § 1466A(a)(1) would clearly prohibit an obscene photographic depiction of an actual minor engaging in sexually explicit conduct, it also criminalizes receipt of "a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting," that "depicts a minor engaging in sexually explicit conduct" and is obscene. Id. § 1466A(a)(1) (emphasis added). In addition, Whorley overlooks § 1466A(c), which unambiguously states that "[i]t is not a required element of any offense under this section that the minor depicted actually exist." 18 U.S.C. § 1466A(c). The clear language of § 1466A(a)(1) and § 1466A(c) is sufficiently broad to prohibit receipt of obscene cartoons, as charged in Counts 21–40.

Whorley, 550 F.3d at 336.[6]

---

[6] We further agree with Whorley that Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), is inapposite. Whorley, 550 F.3d at 336. The statute at issue in Ashcroft was held to be

10

B.

Appellant also claims that § 1466A(b)(1) is unconstitutional as applied to him because he has the right to possess obscenity in the privacy of his shared barracks room.

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. However, "obscene material is unprotected by the First Amendment." Miller, 413 U.S. at 23. Nonetheless, in Stanley, 394 U.S. at 568, the Supreme Court held that a statute prohibiting the possession of obscene material within the home was unconstitutional. In doing so, the Court stated that, "a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch." Id. at 565. The constitutional principle underlying the holding in Stanley is less than clear. Compare United States v. 12 200-Ft. Reels of Super 8mm. Film, 413 U.S. 123, 126 (1973) ("Stanley depended, not on any First Amendment right to purchase or possess obscene materials, but on the right to privacy in the home."), with Osborne v. Ohio, 495 U.S. 103, 108 n.3 (1990) ("We

---

constitutionally overbroad because it reached and proscribed speech that was neither child pornography under New York v. Ferber, 458 U.S. 747, 764-66 (1982), nor obscene under Miller v. California, 413 U.S. 15, 24 (1973). Ashcroft, 535 U.S. at 240. In contrast, § 1466A(b)(1) only prohibits depictions of minors engaging in sexually explicit conduct if the depictions are obscene. 18 U.S.C. § 1466A(b)(1)(A)-(B).

have since indicated that our decision in Stanley was 'firmly grounded in the First Amendment.'") (citation omitted).  But no one disputes that:  (1) obscenity itself is not protected speech under the First Amendment, see Miller, 413 U.S. at 23; (2) Stanley's protection was grounded in the paramount importance accorded in our society to the "privacy of a person's own home," Stanley, 394 U.S. at 564 (emphasis added) (finding that "[the] right to receive information and ideas, regardless of their social worth . . . takes on an added dimension" -- "the [fundamental] right to be free . . . from unwanted governmental intrusions into one's privacy" -- where the prosecution is for "mere possession of [obscene] matter in the privacy of a person's own home"); and (3) Stanley has been strictly limited to its facts, see Osborne, 495 U.S. at 108 ("Stanley was a narrow holding.").

After Stanley, "the States retain[ed] broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home." Stanley, 394 U.S. at 568.  Because "[t]he Constitution extends special safeguards to the privacy of the home," United States v. Orito, 413 U.S. 139, 142 (1973), "Stanley should not be read too broadly," Osborne, 495 U.S. at 108.  "The Court has consistently rejected constitutional protection for obscene material outside the home." Orito, 413 U.S. at 143.  Because the zone of privacy

12

that Stanley protected does not extend beyond the home, id. at 141-43, the issue is whether a shared barracks room is a "home."[7]

While we agree with Judge Stucky that servicemembers have a reasonable expectation of privacy in a shared barracks room that protects them from unreasonable government intrusions, we do not agree that one's privacy interest in a shared barracks room is coextensive with one's privacy interest in their home, see United States v. McCarthy, 38 M.J. 398, 403 (C.M.A. 1993) ("[T]he threshold of a barracks/dormitory room does not provide the same sanctuary as the threshold of a private home."); a place where "[t]he Constitution extends special safeguards," Orito, 413 U.S. at 142. In discussing a servicemember's reasonable expectation of privacy in a shared barracks room, the Court has acknowledged that:

> [t]here are substantial differences between [a barracks room and a private home]. Appellant was assigned his room; he did not choose it. Appellant was assigned his roommate; he did not choose him. Appellant could not cook in his room, have overnight guests, or have unaccompanied underage guests. Appellant knew that he was subject to inspection to a degree not contemplated in private homes.

McCarthy, 38 M.J. at 403. Thus, a soldier has less of an expectation of privacy in his shared barracks room than a

---

[7] Since the First Amendment's protections do not otherwise depend on whether one's conduct occurred within the privacy of one's home, we rely on our Fourth Amendment jurisprudence to determine whether a shared barracks room is a "home" for purposes of Stanley.

civilian does in his home. See, e.g., id. at 401 ("'The soldier cannot reasonably expect the Army barracks to be a sanctuary like his civilian home.'" (quoting Committee for GI Rights v. Callaway, 518 F.2d 466, 477 (D.C. Cir. 1975))); see also Rule for Courts-Martial (R.C.M.) 302(e)(1), (2) ("apprehension[s] may be made at any place, except" at a "private dwelling," the definition of which includes "single family houses, duplexes, and apartments," on or off a military installation, but explicitly excludes "living areas in military barracks"); M.R.E. 313(b) (permitting inspection "of the whole or part of a unit . . . as an incident of command . . . to ensure the security, military fitness, or good order and discipline of the unit").[8]

Here, the fact that Appellant purposefully exposed SPC Bryant to the obscene computer depictions in their shared barracks room highlights the divergent natures of a shared barracks room and a private home. See Stanley, 394 U.S. at 565 ("If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch."). The very

---

[8] Application of McCarthy and reference to R.C.M. 302(e) and M.R.E. 313, which all assist in discerning the scope of the Fourth Amendment's right of privacy in the military context, are appropriate here where we are confronted with the question whether the barracks is a home for purposes of Stanley. See Stanley, 394 U.S. at 564-65.

nature of a shared barracks room increases the risk that obscene materials will be viewed by those who do not wish to view them. Cf. id. at 567 (concluding that an individual's private possession of obscene material in the home does not present the danger that "it might intrude upon the . . . privacy of the general public"). The "natural tendency of material in the home being kept private," Orito, 413 U.S. at 143, is substantially diminished in a shared barracks room.

Moreover, while a servicemember has a reasonable expectation of privacy in the files kept on a personal, password-protected computer for purposes of the Fourth Amendment, see Conklin, 63 M.J. at 337 (finding the warrantless search of a servicemember's computer illegal because "an individual sharing a two-person dormitory room has a reasonable expectation of privacy in the files kept on a personally owned computer"), that privacy interest is not congruent with the discrete and special privacy interest in one's home recognized by Stanley and was, in this case, overcome by a lawful warrant authorizing a search for contraband based on probable cause. See United States v. Leedy, 65 M.J. 208, 214-17 (C.A.A.F. 2007) (finding a search warrant that authorized a search of the appellant's personal computer in his shared dormitory room for child pornography valid where it was based on probable cause); cf. Caplin & Drysdale, Chartered v. United States, 491 U.S. 617,

653 n.15 (1989) ("[T]he law recognizes no right to possess [contraband]." (citing One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 699 (1965))).  Stanley has been limited to its facts, and we decline to extend its holding to a shared barracks room.[9]  See 12 200-Ft. Reels of Super 8mm. Film, 413 U.S. at 127 (observing that the holding in Stanley rests on an "explicitly narrow and precisely delineated privacy right," and "reflects no more than what Mr. Justice Harlan characterized as the law's solicitude to protect the privacies of the life within [the home]" (alteration in original) (internal quotation marks and citation omitted)).

## IV.  DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.

---

[9] To be clear, that Appellant's conduct occurred "in the special maritime and territorial jurisdiction of the United States" is relevant to our analysis only insofar as it satisfies 18 U.S.C. § 1466A(d)(5).  Our conclusion that Appellant's conduct is not protected is based on the determination that Stanley does not extend beyond the home, see Orito, 413 U.S. at 143, and that the shared barracks room at issue in this case does not merit the protections of a home, for purposes of Stanley.

United States v. Bowersox, No. 12-0398/AR

STUCKY, Judge (dissenting):

I disagree with the majority's holding that 18 U.S.C. § 1466A(b)(1) (2006) is constitutional as applied. Where a statute seeks to prohibit constitutionally protected conduct, the statute cannot be examined in a vacuum. This Court must consider how the relevant statutory provisions interact with each other, and examine this interaction in light of the Constitution, Supreme Court precedent, and the facts and circumstances of the case. In this case, Appellant was convicted only of mere possession of obscenity -- conduct that is constitutionally protected in some circumstances under Stanley v. Georgia, 394 U.S. 557 (1969). Therefore, it is necessary to address the applicability of Stanley to determine the constitutionality of § 1466A(b)(1) as applied to Appellant. I believe Stanley applies to the barracks under these circumstances, and would therefore hold that § 1466A(b)(1) is unconstitutional as applied to Appellant.

I.

Generally, obscenity is not protected by the First Amendment. Miller v. California, 413 U.S. 15 (1973); Roth v. United States, 354 U.S. 476 (1957). Specifically, the Supreme Court has held that the production, receipt, transportation, and distribution of obscene materials are not constitutionally protected. United States v. Reidel, 402 U.S. 351 (1971); United

States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 376 (1971); United States v. Orito, 413 U.S. 139, 142 (1973). However, mere possession of obscene material in one's home is constitutionally protected. Stanley, 394 U.S. at 559.

In Stanley, federal and state agents secured a warrant to search Stanley's home to investigate alleged bookmaking activities. Id. at 558. They found little evidence of bookmaking, but found "obscene" films in a bedroom desk drawer. Id. Stanley was subsequently convicted of knowingly possessing obscene matter in violation of Georgia law. Id. The Supreme Court overturned his conviction:

> Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch.

Id. at 565. Stanley has been repeatedly limited to mere possession within the "home." See, e.g., Smith v. United States, 431 U.S. 291, 307 (1977). The threshold issue in this case is whether a shared barracks room may ever constitute a "home" under Stanley.

The majority bases its holding that Stanley does not apply in the barracks on Fourth Amendment grounds: a servicemember does not have the same expectation of privacy in a barracks room as he would in a civilian home. While I agree as a general

2

United States v. Bowersox, No. 12-0398/AR

matter that the barracks does not provide the same expectation
of privacy as a civilian home, I do not agree that a
servicemember's privacy interest in a shared barracks room must
be coextensive with the privacy interest in a home to trigger
the protections of Stanley, and I cannot reconcile the
majority's holding with this Court's Fourth and First Amendment
jurisprudence.[1]

Aside from a limited inspection regime and the need for
discipline and military readiness, a servicemember has Fourth
Amendment protections in a shared barracks room.  See United
States v. Thatcher, 28 M.J. 20 (1989) (recognizing that an

---

[1] I agree with the majority that the Supreme Court has wavered
regarding the import of the constitutional principles underlying
Stanley.  See United States v. 12 200-Ft. Reels of Super 8mm.
Film, 413 U.S. 123, 126 (1973) (suggesting that Stanley was
rooted in the Fourth Amendment rather than the First Amendment);
but see Osborne v. Ohio, 495 U.S. 103, 108 n.3 (1990) ("We have
since indicated that our decision in Stanley was 'firmly
grounded in the First Amendment.'" (citing Bowers v. Hardwick,
478 U.S. 186, 195 (1986), overruled on other grounds by Lawrence
v. Texas, 539 U.S. 558 (2003)).  While the Supreme Court has
gone back and forth about the main constitutional support for
Stanley, looking at the plain language of the opinion and
decades of application, Stanley is now what it originally was --
an opinion rooted in both the First and Fourth Amendments.
Which amendment was more central to the holding of Stanley is
not dispositive of any one case; rather, the relative importance
of each amendment to a particular case will vary depending on
the facts and circumstances.  In other words, Stanley rests on
the intersection of First and Fourth Amendment rights, and it is
necessary to consider both aspects of Stanley to determine its
applicability -- specifically, whether the shared barracks room
in this case constitutes a "home" under Stanley.

inspection regime and the need for military fitness and readiness does not preclude a servicemember's reasonable expectation of privacy in the barracks). Undoubtedly, these military needs limit the application of some Fourth Amendment rights in the barracks. See United States v. McCarthy, 38 M.J. 398, 403 (C.M.A. 1993) ("the threshold of a barracks/dormitory room does not provide the same sanctuary as the threshold of a private home"). However, this Court has acknowledged that "[i]n the military context, the barracks or dormitory often serves as the servicemember's residence, his or her home." United States v. Macomber, 67 M.J. 214, 219 (C.A.A.F. 2009). To this end, this Court has specifically held that servicemembers have some Fourth Amendment protections in a shared barracks. See, e.g., United States v. Conklin, 63 M.J. 333 (C.A.A.F. 2006) (holding that an accused has a privacy interest in files on his personally owned computer); United States v. Middleton, 10 M.J. 123 (C.M.A. 1981) (recognizing that a locked wall locker is protected by the Fourth Amendment). Indeed, a servicemember's Fourth Amendment protections are at their apex when it comes to secured personal property within the barracks.

This Court has also upheld a servicemember's First Amendment rights as long as the speech does not have a "direct and palpable connection" to "the military mission or military environment." See United States v. Wilcox, 66 M.J. 442, 448–49

4

(C.A.A.F. 2008) (finding a conviction for making anti-government, disloyal, and racially intolerant statements online legally insufficient under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2006)).

Like Stanley, this case lies at the intersection of First and Fourth Amendment rights.  Appellant was charged with conduct protected by the First Amendment -- mere possession -- in a place expressly protected by the Fourth Amendment -- a password-protected computer.  Whatever the limits of constitutional protections in the barracks are,[2] where, as here, a servicemember's First and Fourth Amendment rights intersect, the barracks are most like the "home" envisioned by the Supreme Court in Stanley.

The majority attempts to distinguish the protections identified above from "the discrete and special privacy interest in one's home recognized by Stanley."  This "discrete and special privacy interest" is not separate from a servicemember's First and Fourth Amendment rights; rather, it is just an acknowledgment that in certain circumstances the protections overlap:

_____

[2] To be clear, I do not believe that Stanley applies in the barracks under every circumstance.  For example, the constitutional protections outlined in Stanley would not extend to hanging obscene posters in a barracks dormitory because of the potential effect on military discipline.

> [The] right to receive information and ideas, regardless of their social worth, is fundamental to our free society. Moreover, in the context of . . . a prosecution for mere possession of [obscenity] in the privacy of a person's own home -- that right takes on an added dimension . . . the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy.

Stanley, 394 U.S. at 564 (internal citation omitted).

These constitutional protections cannot be overcome, as the majority asserts, by a lawful warrant authorizing a search for contraband.  Stanley does not address the authorization to search for such materials in the home.  See Stanley, 394 U.S. at 568 (overturning Stanley's conviction even though there was a lawful warrant to search for contraband).  As in Stanley, a lawful warrant may grant access to search a private place, but it cannot negate Stanley's prohibition on criminalizing mere possession of obscene materials.[3]

Even assuming, as the majority does, that the application of Stanley depends entirely on the Fourth Amendment, I would hold that Stanley applies in the barracks under these circumstances.  Bowersox, __ M.J. at __ (13) n.7.  The Constitution does not end at the barracks door, and the Fourth Amendment applies to the area at issue -- a password-protected

---

[3] The cases the majority cites to support this proposition are inapposite as they address searches for materials that are not constitutionally protected, such as contraband and child pornography.  United States v. Bowersox, __ M.J. __ (15-16) (C.A.A.F. 2013).

computer in a shared barracks room.  Here we are dealing with private materials in a private space that, by virtue of password protections, was inaccessible by others.  Unlike choosing a roommate, cooking, inspections, overnight guests, or apprehension by military police, the "use" of the barracks room at issue did not implicate the shared or command aspects of the barracks room -- the aspects that make a barracks room less like a "home."[4] Rather, this case only involves aspects of a barracks room that are most like a "home" and are specifically protected under the Fourth Amendment.

Assuming Stanley applies, the next question is whether § 1466A (b)(1) is unconstitutional as applied to Appellant.

## II.

Possession of actual child pornography functions as an exception to the constitutional protections in Stanley and

---

[4] The fact that Appellant invited his roommate, SPC Bryant, over to his side of the room and showed him an image on his computer does not negate Appellant's privacy interest in everything else on the computer.  Furthermore, Appellant did not expose SPC Bryant to any of the obscene materials at issue; Appellant apparently only showed him the images he was found not guilty of possessing.  Where an individual voluntarily looks at something when asked by his roommate, the risk of exposure to obscene materials is no greater than in a college dormitory or other civilian roommate situation and it certainly does not "intrude upon the privacy of the general public."  Bowersox, __ M.J. at __ (15) (ellipsis and quotation marks omitted) (quoting Stanley, 394 U.S. at 567).  It cannot be the case that the "home" envisioned in Stanley excludes shared living situations because of an increased "risk that obscene materials will be viewed by those who do not wish to view them."  Id.

7

Miller because of the dangers it presents to real children.  See

New York v. Ferber, 458 U.S. 747, 757–61 (1982); Osborne, 495

U.S. at 109.  To further protect children, Congress passed the

Child Pornography Prevention Act of 1996 (CPPA), which

criminalized aspects of child pornography, including virtual

child pornography.  18 U.S.C. § 2256.  In 2002, the Supreme

Court held that the CPPA was overbroad and unconstitutional

because it banned speech that was neither actual child

pornography covered by Ferber, nor obscene under Miller.

Ashcroft v. Free Speech Coalition, 535 U.S. 234, 239–40, 258

(2002).  After Ashcroft, to "restore the government's ability to

prosecute child pornography offenses successfully" Congress

remedied the error in the CPPA and enacted new laws to address

virtual child pornography.  S. Rep. No. 108-2, at 1, 4–6;

PROTECT Act, Pub. L. No. 108-21, § 504, 117 Stat. 650, 680–82

(2003) (codified as amended at 18 U.S.C. § 1466A).

Appellant was charged with violating 18 U.S.C.

§ 1466A(b)(1), which prohibits knowing possession of "a visual

depiction of any kind" that "depicts a minor engaging in

sexually explicit conduct" and is obscene.  The statute

expressly provides that it "is not a required element of any

offense under this section that the minor depicted actually

exist."  § 1466A(c).  Five circumstances trigger application of

the statute.  § 1466A(d)(1)–(5).  The first four involve

communicating or transporting virtual child pornography through interstate or foreign commerce by any means, including a computer. § 1466A(d)(1)-(4).

If Appellant had been charged under any of the first four triggering circumstances, he would not be entitled to the protections of Stanley because he would have been charged with activity beyond mere possession. Indeed, besides Stanley, all of the cases cited by the majority to support its holding involve conduct beyond mere possession, or involve possession of actual child pornography -- both of which raise different constitutional issues. However, the triggering circumstance charged in this case was that Appellant committed the offense in the barracks which is "in the special maritime and territorial jurisdiction of the United States." § 1466A(d)(5). In other words, Appellant was charged with the knowing possession of virtual child pornography in the special maritime and territorial jurisdiction of the United States.

While Congress does have the full and exclusive authority to legislate for the special maritime and territorial jurisdiction of the United States and therefore the barracks, it cannot legislate without regard for constitutional rights recognized by the Supreme Court. I can find no support, in law or logic, for the proposition, implied by § 1466A(d)(5), that Stanley does not apply in the special maritime and territorial

jurisdiction of the United States.  Even if Congress intended to criminalize the depictions at issue, where an accused is only convicted of constitutionally protected conduct, the fact that the statute expressly provides that it "is not a required element of any offense under this section that the minor depicted actually exist" does not save the statute.[5]  § 1466A(c). Where there is tension between a constitutional right and a statute, the constitution trumps.  See Marbury v. Madison, 5 U.S. 137, 180 (1803) ("a law repugnant to the constitution is void").

I may not agree with Appellant's choice of reading material, but he was charged only with constitutionally protected conduct, in a place deserving of constitutional protection, and I would therefore reverse the decision of the United States Army Court of Criminal Appeals.

_____

[5] I agree with Part III.A of the majority's decision insofar as it suggests that the combination of § 1466A(a)(1) and § 1466A(c) is not constitutionally deficient.  Bowersox, __ M.J. at __ (8-10); see also United States v. Whorley, 550 F.3d 326 (4th Cir. 2008) (finding the accused's conviction under § 1466A(a)(1) for the receipt of obscene depictions of minors constitutional). However, unlike the charge for receiving obscenity under § 1466A(a)(1) in Whorley, Appellant was charged with constitutionally protected possession under § 1466A(b)(1). Therefore, the Whorley court's analysis of § 1466A(c) is distinguishable to the point of irrelevance, and this Court must look specifically to the interaction between § 1466A(b)(1) and (c).